Robert F. COLQUHOUN et al.

v.

Helen WEBBER.

Supreme Judicial Court of Maine.

Argued April 2, 1996.

Decided Oct. 15, 1996.

■■■■■■

■■■■■■

William C. Knowles (orally), Roy S. McCandless, Laurie Williamson, Verrill & Dana, Portland, for Plaintiffs.

Susan J. Parcels (orally), Chute & Associates, Portland, for Defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, and RUDMAN, JJ.

RUDMAN, Justice.

Helen Webber appeals from the judgment entered in the Superior Court (Lincoln County, *Brodrick, J.*) granting a summary judgment in favor of the Colquhouns in their quiet title action, and from the judgments entered after a jury-waived trial (Lincoln County, *Brennan, J.*) in favor of the Colquhouns on the remaining counts of their complaint seeking declaratory relief, damages for trespass, and slander of title. Webber raises four issues on appeal: (1) Whether the court erred in granting the summary judgment in favor of the Colquhouns based on a referee's finding in the previous adjudication between the parties, (2) whether there was sufficient evidence to support the court's finding that Webber had slandered the Colquhouns title to land, (3) whether the court's declaratory judgment was improperly drafted and overly broad, and (4) whether the court erred or abused its discretion in its award of damages and attorney fees to the Colquhouns. Although we disagree with the first three of Webber's assertions, we agree that the court erred in calculating the Colquhouns' special damages, and therefore vacate the judgment only in respect to special damages awarded the Colquhouns.

The parties to this action have been before us once before, and an understanding of the first action, *Colquhoun v. Webber,* 505 A.2d 794 (Me.1986), is central to the resolution of the present dispute. We therefore begin with a short recitation of the earlier case.

The Colquhouns own a summer home on Round Pound in Bristol bordered by land owned at one time by Helen Webber. In 1979 a logger hired by Webber and her then spouse breached a stone wall and stored logs on land owned by the Colquhouns. As a result of this trespass, the Colquhouns commenced a trespass action against the logger and the Webbers. *Id.* at 795. The suit was referred to a referee for determination. The referee warned the parties that his determination of the trespass action would not quiet title to the disputed property. *Id.* Although neither party sought to amend their pleadings to seek a determination of title, the referee considered the ownership of the land and the relevant boundaries in determining whether a trespass did in fact occur. The referee concluded that the Colquhouns had established title both by deed and through adverse possession to all of the disputed lands, including the land occupied by the so-called Dan Coates Road, which he concluded did not exist. Based on his findings that the Colquhouns owned the disputed land and that the Webbers had not established the existence of a public or private way or the existence of an easement across the land, the referee found that the logger's entry onto the Colquhouns' land constituted a trespass and awarded damages in the amount of three hundred dollars to the Colquhouns.

Based on the referee's report, the Superior Court entered a judgment in favor of the Colquhouns, and the Webbers appealed. *Id.* At oral argument before us the Webbers no longer contested that they had damaged property owned by the Colquhouns but rather sought only to prevent any collateral estoppel consequences from attaching to the referee's determination that the Dan Coates Road never had existed. *Id.* Because the Webbers now admitted their trespass, making the issue of the existence of and title to the land occupied by the Dan Coates Road of "no present, direct consequence," we, after again emphasizing that the action was only an action in trespass and not a real action, affirmed the Superior Court's judgment based "solely on ... the coincident circumstances" that the Colquhouns found the damage award sufficient and that the Webbers stood willing to pay the award for damage

done to land they admitted the plaintiffs owned. *Id.* We concluded our affirmance by stating that "[a]ny declaration by the referee as to the Dan Coates Road is entirely unnecessary to this present final judgment and therefore can have no preclusive effect in any future litigation between the parties." *Id.* (citations omitted).

In 1986 the Colquhouns again commenced an action against Helen Webber and her then spouse for trespass. This initial complaint was subsequently amended four times over the course of three years to add additional defendants and counts. The fourth amended complaint contained five counts denominated as follows: Count I: Trespass; Count II: Slander of Title; Count III: Declaratory Judgment; Count IV: Quiet Title pursuant to 14 M.R.S.A. §§ 6651-54 (1980); and Count V: Quiet Title pursuant to 14 M.R.S.A. §§ 6655-58 (1980). Webber answered the amended complaint and by her counterclaim asserted ownership of or easement rights to the Dan Coates Road.

The slander of title claim against Webber arose from her recording, during the pendency of this action, a quitclaim deed in the Lincoln County Registry of Deeds that purportedly conveyed her interest in land that she knew was claimed by the Colquhouns to "each and every citizen of the United States of America equally."

In 1990 the Colquhouns moved for a summary judgment on their quiet title counts, claiming that the referee's findings in the previous action estopped Webber from challenging the Colquhouns' quiet title action. The Superior Court agreed and granted a summary judgment in favor of the Colquhouns on Counts IV and V of their complaint.

The case proceeded to trial on the remaining counts of the complaint. After a jury-waived trial, a judgment was entered in favor of the Colquhouns on all counts and against Webber on her counterclaim. After the court granted in part and denied in part Webber's motion to alter or amend the judgment and for additional findings of fact and conclusions of law, this appeal followed.

# I

## *The Summary Judgment*

■ Webber contends that the court (*Brodrick, J.*) erroneously relied on the doctrine of collateral estoppel in granting the plaintiff's motion for a summary judgment on Counts IV and V. She argues that our decision in *Colquhoun I,* 505 A.2d at 794, removed any effect of collateral estoppel in this subsequent litigation. Webber misperceives the record in this case, as well as the thrust of our decision.

First, in moving for a summary judgment on the "quiet title" counts, the Colquhouns candidly acknowledged that the status of the Dan Coates Road, as opposed to the underlying title, remained an open issue. They relied, however, on the referee's finding that they had acquired title to the land by adverse possession. That question of title, they argued, was no longer open to dispute. Indeed, unlike the earlier litigation, Webber has not claimed any title to the disputed land in this case, but only a right to use, for access to her land, the way that has been called the Dan Coates Road. In the earlier appeal, the Webbers expressed their concern for the "possible collateral estoppel" effect only of the referee's declaration as to the *existence* of the Dan Coates Road. Because the existence or non-existence of the road would not have any consequence on the Colquhouns' underlying fee and would not justify the Webbers' trespass, we stated that determination of the legal status of the road was "entirely unnecessary to this present final judgment." *Id.* at 795. *See Davis v. Bruk,* 411 A.2d 660, 666 (Me.1980) (easement for a right-of-way, without more, does not permit grantee to "disturb the soil upon the fee" of the owner of the servient estate) (quoting *Littlefield v. Hubbard,* 120 Me. 226, 230, 113 A. 304, 306 (1921); *see also Lamb v. Euclid Ambler Assocs.,* 563 A.2d 365, 368 (Me.1989). Our focus was on the existence of the Dan Coates Road and not the ownership of the underlying fee. Our decision left intact the referee's determination of title on which the later summary judgment is based.

Second, the court did not spell out the nature of the summary judgment granted. The effect of the preliminary judgment pur-

suant to 14 M.R.S.A. § 6654 simply left Webber to her proof on her counterclaim to establish her right to use the Dan Coates Road. *Cf. Chickering v. Yates,* 420 A.2d 1219 (Me. 1980) (describing the procedural intricacies of the statute that is an historical anomaly).

Finally, Webber ignores the specific basis on which the court (*Brennan, J.*) ultimately entered judgment against her on her counterclaim. The court found that "Webber presented no evidence with respect to her counterclaim and thus failed to meet her burden of proof at trial on the issues presented in her counterclaim." In short, the summary judgment on the quiet title counts did not preclude Webber from establishing the rights she asserted in this litigation.

## II

### *Slander of Title*

Webber first contends that the evidence presented by the Colquhouns was insufficient to establish the necessary elements of the tort of slander of title, Count II of the Colquhouns' complaint. As both parties point out, while the tort of slander of title is of ancient origin, we have never been called on to set forth the elements of the tort. The elements of the tort, however, are well-established in the common law.

 "An action of slander of title ... is a sort of metaphorical expression.... Slander of title ordinarily means a statement of something tending to cut down the extent of title...." *Pater v. Baker,* 3 C.B. 831, 869, 136 Eng.Rep. 333, 348 (1847). Thus "slander of title" is a form of the tort of injurious falsehood that protects a person's property interest against words or conduct which bring or tend to bring the validity of that interest into question. To prove slander of title a claimant must prove (1) there was a publication of a slanderous statement disparaging claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard of its falsity; and (4) the statement caused actual or special damages. *See, e.g., First Sec. Bank of Utah, N.A. v. Banberry Crossing,* 780 P.2d 1253, 1256–57 (Utah 1989). *See also Fischer v. Bar Harbor Banking & Trust Co.,* 673 F.Supp. 622, 626 (D.Me.1987) (to establish slander of title claim "plaintiff must prove 'falsity' 'publication,' 'malice' and 'special damages'"); PROSSER AND KEETON ON THE LAW OF TORTS § 128 (5th ed. 1984) (stating that elements of cause of action are falsity, publication, malice and special damages).

Webber contends that the Colquhouns' interest in the property that she is purported to have slandered as a result of her filing a frivolous quitclaim deed is inadequate to support a claim for slander of title because the Colquhouns' interest is based on their adverse possession of the subject property. Webber concludes that because she filed her quitclaim deed before the Colquhouns had undertaken an action to obtain a judicial decree establishing title by adverse possession to the disputed land the Colquhouns lacked a legally protectable interest in the land. The Colquhouns counter that title by adverse possession is a sufficient legal interest to maintain their slander of title action.

### *Property Interest*

The Restatement (Second) of Torts broadly defines the interest required to maintain an action for slander of title as some legally enforceable degree of ownership. Comment c to section 624 states in pertinent part:

Any kind of legally protected interest in land, chattels or intangible things may be disparaged if the interest is transferable and therefore salable or otherwise capable of profitable disposal. It may be real or personal, corporeal or incorporeal, in possession or reversion. It may be protected either by legal or equitable proceedings and may be vested or inchoate. It may be a mortgage, lease, easement, reversion or remainder, whether vested or contingent, in land or chattels, a trust or other equitable interest.

RESTATEMENT (SECOND) OF TORTS § 624 cmt. c (1977). While this comment to the Restatement indicates that an interest obtained by an adverse possessor is a sufficient interest in property to support a slander of title claim, support for this proposition is not unanimous. Indeed, there is a split of authority with respect to whether slander of

title can be applied to a title acquired by adverse possession but not yet established by decree. *Compare Howard v. Schaniel*, 113 Cal.App.3d 256, 169 Cal Rptr. 678 (1980) *with Davis v. Sponhauer*, 574 N.E.2d 292 (Ind.Ct. App.1991).

■■■ Our decisions discussing the nature of the adverse possessor's interest support the conclusion that title by adverse possession is a sufficient interest in property for a claimant to maintain an action for slander of title. Title by adverse possession may be established either pursuant to the common law or statutory provisions. *John Wallingford Fruit House Inc. v. MacPherson*, 386 A.2d 332, 333 (Me.1978). Title obtained by statutory adverse possession or common law disseizin vests by operation of law a perfect title in fee simple absolute in the adverse holder. *See, e.g., Brackett v. Persons Unknown*, 53 Me. 228 (1861). As we explained long ago:

A legal title is equally valid when once acquired, whether it be by disseizin or by deed, it vests the fee simple although the modes of proof when adduced to establish it may differ. Nor is a judgment at law necessary to perfect a title by disseizin any more than one by deed. In either case, when the title is in controversy, it is to be shown by legal proof, and a continued disseizin for twenty years is as effectual for that purpose as a deed duly executed. The title is created by the existence of the facts, and not by the exhibition of them in evidence.

An open, notorious, exclusive and adverse possession for twenty years, would operate to convey a complete title to the plaintiffs, as much so as any written conveyance. And such title is not only an interest in the land, but it is one of the highest character, the absolute dominion over it, and the appropriate mode of conveying it is by deed.

*School–Dist. No. 4, in Winthrop v. Benson*, 31 Me. 381, 384–85 (1850). Thus, fee title vests in the adverse possessor at the end of the adverse possession period and no judicial action is necessary to effectuate the transfer. In the Restatement's terms, title by adverse possession constitutes "a legally protected interest in land, [that] is transferable ... or otherwise capable of profitable disposal." Therefore, the Colquhouns' interest in the subject property, which they establish by adverse possession, is a sufficient interest to maintain their slander of title claim.

Webber next contends that the Colquhouns' allegations of pecuniary loss based on their expenditures to clear title are insufficient to establish the requisite element of special damages, and that their failure to allege and prove a specific lost sale as a result of her filing the frivolous deed is fatal to their slander of title claim. The Colquhouns counter that attorney fees and costs incurred in the course of mitigating the effect of Webber's filing of her quitclaim deed constitute special damages.

*Special Damages*

As with the previous issue, courts are divided as to what constitutes proof of special damages in a slander of title action. In some jurisdictions, proof of special damages, *i.e.*, pecuniary loss, requires a showing that there was some impairment of vendibility, which is usually demonstrated by proof of a lost sale. *See generally* James O. Pearson, Jr., Annotation, *What Constitutes Special Damages in Action for Slander of Title*, 4 A.L.R. 4th 552, 562 (1981 & Supp.1995). The majority of jurisdictions that have considered the issue, however, have held that an aggrieved party has the right to recover as special damages the litigation expenses incurred in removing the effects of the slander, even in the absence of an impairment of vendibility. *Id.* A leading treatise on the law of torts also supports the conclusion that expenses incurred in clearing title are includable within the tort's definition of special damages. PROSSER AND KEETON ON THE LAW OF TORTS § 128 (5th ed. 1984) ("It would also appear obvious that special damages include the expenses of legal proceedings necessary to remove a cloud on the plaintiff's title caused by the falsehood, and other expenses ... reasonably incurred to counteract the disparagement...."). The state of the law as reported by the Restatement of Torts also indicates that the special damages for which a tortfeasor incurs liability include:

the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement.

RESTATEMENT (SECOND) OF TORTS § 633(1)(b) (1977).

■ We adopt the majority position that attorney fees incurred in removal of a cloud on a title caused by a spurious and vexatious deed do constitute proof of special damages in a slander of title action even in the absence of proof of an impairment of vendibility. In doing so, however, we emphasize that the costs of litigation and attorney fees in *the action for* slander of title itself cannot constitute the required special damages. 50 AM. JUR.2d *Libel and Slander* § 557 (1995). The prevailing party in a slander of title action may recover as special damages those attorney fees and expenses incurred to remove the cloud on the title but not those incurred to prosecute the slander of title action. *See* PROSSER AND KEETON ON THE LAW OF TORTS § 128 (5th ed 1984), RESTATEMENT (SECOND) OF TORTS § 633(1)(b) (1977); James O. Pearson, Jr., Annotation, *What Constitutes Special Damages in Action for Slander of Title*, 4 A.L.R. 4th 552, 562 (1981 & Supp.1995). It is only the costs of actions taken to clear a plaintiff's title and such other expenses that are reasonably necessary to counteract the disparagement that are appropriately characterized as "special damages" for which the tortfeasor should bear liability. *Id.*

■ In the present case, the Colquhouns submitted affidavits that detailed the expenses incurred by them to remove the cloud on their title through the prosecution of the quiet title counts and declaratory judgment count of their complaint. Thus, the Colquhouns submitted sufficient evidence of special damage to maintain their slander of title claim.

### III

Webber raises two contentions with respect to the Superior Court's declaratory relief, Count IV of the Colquhouns' complaint. First, Webber contends that the court's declaratory judgment declaring Webber's frivolous deed null and void is overly broad. Second, Webber contends that the portion of the declaratory judgment quieting title to the disputed areas must be vacated if this Court finds that the Superior Court erred in granting summary judgment in favor of the Colquhouns on their quiet title counts.

### *Declaring the Webber Deed a Nullity*

■ We have stated that the purpose of the Declaratory Judgment Act is to provide a more adequate and flexible remedy in cases where jurisdiction already exists. *Hodgdon v. Campbell*, 411 A.2d 667, 669 (Me.1980). Furthermore, we have stated that the declaratory judgment remedy should be liberally construed to provide a simple and effective means by which parties may secure a binding judicial determination of their legal rights, status, or relations pursuant to statutes and written instruments. *Id.* "An action for declaratory judgment is appropriate for the determination of the validity ... of a deed." 26 C.J.S. *Declaratory Judgments* § 71 (1956); *but see Town of Nags Head v. Tillett*, 314 N.C. 627, 336 S.E.2d 394, 396 (1985) (determination that deed was void as a matter of law was beyond scope of declaratory judgment act). In the present case, the court found that to counteract the frivolous deed filed by Webber on March 23, 1989, it was necessary to have the deed, and subsequent deeds modifying the original deed, marked as null and void. The court further required that the judgment nullifying the deeds be filed in the registry of deeds, and that the nullified deeds reference the judgment. The judgment stated in pertinent part:

> The deed dated March 23, 1989, from the defendant Helen Webber to each and every citizen of the United States and recorded in the Lincoln County registry of Deeds in Book 1538, Page 266, and subsequent deeds modifying that deed recorded in said Registry in Book 1588, Page 64 and in Book 1676, Page 303, and any other deed which may relate to the March 23, 1989 deed noted above are void *ab initio* and of no effect, legal equitable or otherwise. The Registrar of Deed of Lincoln

County shall record this judgment in the Registry and so mark the above deed to reference this judgment; moreover, the Registrar is also ordered to stamp the above referenced deeds as "NULL AND VOID" on each page of said deeds.

Contrary to Webber's contention, this judgment is not overly broad: it simply declares the March 23, 1989, deed and all subsequent related deeds void *ab initio*. Thus, this portion of the court's declaratory judgment should not be disturbed.

Webber next contends that the trial court abused its discretion by awarding attorney fees in the amount of $44,913.68 to the Colquhouns on their trespass claim, Count I of the Colquhouns' complaint, and that the trial court erred in its award of special damages consisting of the costs incurred in prosecuting the slander of title claim, Count II of the Colquhouns' complaint. The Colquhouns counter that the court neither erred nor exceeded its discretion with respect to its determination of amounts owed to the Colquhouns.

*Attorney Fees for the Trespass Count*

■■■■ We review a determination of attorney fees for an abuse of discretion. *McCain Foods, Inc. v. Gervais*, 657 A.2d 782, 784 (Me.1995). Title 14 M.R.S.A. § 7552 (Supp.1986) *repealed by* P.L.1995 ch. 450, § 2,[1] states in pertinent part:

> Whoever cuts down, destroys, injures or carries away any ornamental or fruit tree, Christmas tree, evergreen boughs, agricultural product, timber, wood, underwood, stones, gravel ore, goods or property of any kind from land not his own, without license of the owner, or injures or throws down any fences, bars or gates or leaves such gates open or breaks glass in any building is liable in damages to the owner in a civil action. If such an act or such acts are committed willfully or knowingly, the defendant is liable to the owner in treble damages, for attorney's fees and for court costs.

In the present case, the court found that Helen Webber had willfully and knowingly trespassed on the Colquhouns' property causing damage in the amount of $6,087.11. Because the trespass was willful, the court appropriately trebled the actual damages requiring Webber to pay damages in the amount of $18,261.33. The court also awarded attorney fees in the amount of $44,913.68 on the trespass count. As the court pointed out, these fees were set out in painstaking detail in the attorneys' affidavits submitted to the court and were not "out of line" when considered in light of the protracted and complex nature of the litigation. Moreover, the fees were not challenged by Webber at the trial. Thus, the court did not abuse its discretion in awarding attorney fees in an amount equal to the cost of the litigation. *See Winslow v. Merrifield*, 538 A.2d 283, 284 (Me.1988) (stating that in the section 7552 circumstance of deliberate trespass the award of attorney fees and costs is mandated in order to relieve the successful plaintiff of the cost of litigation). We, therefore, affirm the award of damages and remand for deter-

---

1. In their brief, the Colquhouns erroneously cite to the present version of 14 M.R.S.A. § 7552. The current provision states in pertinent part:

 **4. Damages recoverable.** Damages are recoverable as follows.

 . . . . .

 **B.** A person who intentionally or knowingly violates subsection 2 is liable to the owner for 3 times the owner's damages as measured under subsection 3.

 **5. Costs and fees.** In addition to damages, interest and costs, the owner may also recover from the person who violates subsection 2 the reasonable costs of professional services necessary for determining damages and proving the claim, provided that the person first has written notice or actual knowledge that a claim is being asserted.

 *The amount awarded for professional services may not exceed 50% of the damages recovered pursuant to section 4 plus interest on the damages.*

 14 M.R.S.A. § 7552 (Supp.1995) (emphasis added). Thus, the current provision would cap the Colquhouns' attorney fees at 50% of their treble damage award. However, because the Colquhouns commenced their suit prior to the enactment of this provision and the legislature did not expressly make the new provision apply retroactively, it is not applicable to the Colquhouns' action. *See e.g., Salenius v. Salenius*, 654 A.2d 426, 429 (Me.1995) (statute will generally be construed to apply prospectively unless legislative intent to make it apply retrospectively is expressly stated).

 

mination of additional attorney fees arising from defense of this appeal. *Id.* ("In the circumstance of an unsuccessful appeal by a violator of section 7552, an award of attorney fees is mandatory.").

## IV

### *Special Damages in the Slander of Title Action*

██ Webber next contends that the trial court erred in its determination of the special damages arising from the slander of title claim. With respect to the slander of title count the Superior Court stated:

> The Court also finds that defendant Helen Webber slandered the plaintiffs' title by publishing the March 23, 1989 deed in the Lincoln County Registry of Deeds in Book 1538, Page 266, (as subsequently modified). In addition to the declaratory relief granted below the court finds that plaintiffs incurred special damages in the amount of $15,021.01 directly caused by the defendant's action.

The court arrived at this amount by summing the amounts the Colquhouns claimed in their affidavits were directly associated with the slander of title claim. In claiming and awarding this amount, however, the Colquhouns and the court misconstrue what constitutes "special damages" for the tort of slander of title.

██ "[T]he costs of litigation and attorneys' fees in *the action for* [slander of title cannot] constitute the required special damages." 50 Am.Jur.2d *Libel and Slander* § 557 (1995). As discussed earlier, the prevailing party in a slander of title action may recover as special damages those attorney fees and expenses accruing from removing the cloud on the title. *See* PROSSER AND KEETON ON THE LAW OF TORTS § 128 (5th ed 1984), RESTATEMENT (SECOND) OF TORTS § 633(1)(b) (1977); James O. Pearson, Jr., Annotation, *What Constitutes Special Damages in Action for Slander of Title,* 4 A.L.R.4th 552, 562 (1981 & Supp.1995). *Cf. Prentiss v. Shaw,* 56 Me. 427, 433 (1869) (stating that in a false imprisonment action, claimant was entitled to recover pecuniary indemnity including expense of cure). In contrast, the court in this case based its

award of special damages on the legal cost of *prosecuting* the slander of title action. The award of costs associated with prosecuting the slander of title count not only does not represent expenses reasonably necessary to counteract the publication of the disparagement, but also their award violates the "American Rule," which provides that absent a statutory provision or contractual agreement litigants bear their own attorney fees and litigation costs. It is the costs of prosecution of the counts which cleared the Colquhouns' title, *i.e.* the quiet title counts and the declaratory judgment count which are appropriately characterized as "special damages" and for which Webber should bear liability. Because the court computed its award of damages for the slander of title action based on the costs of prosecuting the slander of title count and not based on the expense of measures reasonably necessary to counteract the publication of the slander, we vacate the damage award on Count II and remand for a proper determination of the Colquhouns' damages arising from Webber's disparagement of their title.

The entry is:

Judgment affirmed except as to Count II. Judgment on Count II vacated. Remanded for further proceedings consistent with the opinion herein.

All concurring.