STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NOS. RE-06-50
GAB-YOR - 8/1/2007

GEOFFREY S. CARABOOLAD, Trustee
of the M.D. REALTY TRUST,

Plaintiff

v.

ORDER

DONALD L GARBRECHT
LAW LIBRARY

JAN 07 2008

INDIAN RIDGE HOMEOWNERS
ALLIANCE, et als.,

Defendants

This matter comes before the Court on Plaintiff's motion to strike, Plaintiff's partial motion for summary judgment, and Defendant's cross-motion for summary judgment pursuant to M.R. Civ. P. 56(c).

## BACKGROUND

Plaintiff Geoffrey Caraboolad ("Caraboolad") is a real estate developer and the Trustee of the M.D. Realty Trust ("the Trust"), which was formed under Massachusetts law. Defendants Michael and Bonnie Tahan ("the Tahans") are residents of Kennebunkport. Defendant Indian Ridge Homeowner's Alliance ("the Alliance") is a homeowners' association for the Kennebunkport subdivision known as Indian Ridge, which Caraboolad developed in 1991. Membership in the Alliance was intended to be automatic by virtue of acquiring a deed to an Indian Ridge lot. The homeowner's association was intended to be responsible for maintenance and upkeep of the subdivision.

The history of the Alliance is somewhat complicated; it was not legally formed until 1998, but because it did not file annual reports, it was suspended in 2000. Residents decided to resurrect the Alliance in June 2003 as a means of assessing fees to cover snow plowing and other maintenance. The Alliance was again administratively dissolved in October 2005 for failing to file an annual report, but has been in good standing since March 2006.

Turning to the crux of this dispute, Caraboolad owns undeveloped Lots 4 and 7 in the subdivision. The Tahans have owned Lot 6 since 1996. The deeds for each lot in the subdivision include certain covenants and restrictions. Caraboolad contends that the Tahans violated these restrictions because they failed to obtain the approval of the Indian Ridge Realty Trust (or its successors or assigns) before they built what he characterizes as a detached garage on their property. Instead, they sought and received a building permit from the Town of Kennebunkport in 2001 to build an additional structure, which they describe as a "carriage house." Caraboolad alleges that the Tahans did not obtain the consent of the developer as required; they claim that they notified the developer by sending building plans, but received no response.

A related issue is the Alliance's efforts to assess late fees against Caraboolad and its alterations to the restrictive covenants. In 2005, the Alliance realized that many subdivision residents had not acted in accordance with the restrictive covenants when making small changes; i.e., some chimneys were made of stone rather than brick. As a result of the noncompliance, the Alliance decided to enact minor changes to the restrictions. Such changes included altering minimum square footage, allowing stone chimneys, and clarifying what accessory structures would be allowed. Michael Tahan, who was then president of the Alliance, notified residents of the proposed amendments in August 2005 and informed them of a meeting to vote on them. Caraboolad did not

2

attend the September meeting, at which the changes were approved by the requisite number of lot owners. In January 2006, the amendments were recorded. Also, the Alliance pursued homeowners who were in arrears on their assessments. Caraboolad had been in arrears during the period of 2003-2006. He ultimately paid his fees through 2004, but did not repay the full amount he owed. After recording liens on his property for failure to pay assessments, the arrearages became the subject of a small claims proceeding against Caraboolad.

Caraboolad sued the Indian Ridge Homeowner's Alliance in April 2006 for declaratory judgment, slander of title, breach of contract, common law nuisance, and statutory nuisance, and seeking injunctive relief and a receivership and strict accounting. Caraboolad argues that the Alliance was not authorized to amend some covenants, that it failed to enforce other covenants, and that it improperly assessed his arrearages. In May 2006, he also filed suit against the Tahans in his capacity as Trustee, seeking enforcement of covenants and restrictions pertaining to their carriage house or garage, alleging common law and statutory nuisance, and seeking injunctive relief. These two actions were consolidated upon motion per M.R. Civ. P. 42(a). Caraboolad and the Trust now move for partial summary judgment on the claim for permanent injunctive relief against the Tahans. The Tahans filed a cross-motion for summary judgment on all claims in the complaint. Caraboolad also filed a motion to strike the defendants' statement of material facts.

## DISCUSSION

1.  <u>Motion to Strike</u>.

Caraboolad moves to strike the defendants' statement of material facts because it does not comply with M.R. Civ. P. 56. He argues that the 67 numbered paragraphs actually contain 123 statements to which he must respond, in violation of the

3

requirement for "short and concise" statements in Rule 56(h)(2). Although the motion was filed in February 2007, on April 2, 2007, an amendment to Rule 56 went into effect that prohibits motions to strike. *See* M.R. Civ. P. 56(i)(1). Instead, opposing parties may object to a "factual assertion, denial, or qualification" by noting its objection in reply and explaining the reason for the objection with "any supporting authority or record citation." *Id.* Accordingly, the motion is denied, but the Court may note Caraboolad's objections when evaluating the defendants' statement of material facts.

### 2. Summary Judgment Standard.

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

### 3. Caraboolad's Claim for Permanent Injunctive Relief.

For preliminary or permanent injunctive relief to be granted, the moving party must demonstrate that it will suffer irreparable harm without an injunction, that there is a "likelihood of success on the merits," that any harm to the opposing party if an injunction is granted is outweighed by the harm to the moving party if an injunction is not granted, and that "the public interest will not be adversely affected" by such relief. *Ingraham v. U. of Me. at Orono*, 441 A.2d 691, 693 (Me. 1982) (citations omitted). If a

4

party cannot meet all four criteria, an injunction will not be granted. *Bangor Historic Track, Inc. v. Dept. of Agriculture, Food, and Rural Resources*, 2003 ME 140, ¶ 10, 837 A.2d 129, 132-133.

a.    Irreparable Injury Without Injunction.

First, a plaintiff must demonstrate that he or she will suffer irreparable harm in the absence of an injunction. *Ingraham*, 441 A.2d at 693. "An injury for which there is no adequate remedy at law is an irreparable injury." *Bar Harbor Banking & Trust Co. v. Alexander*, 411 A.2d 74, 79 (Me. 1980) (citation omitted).

Caraboolad argues that the Tahans' carriage house or garage has created an irreparable injury to him or his two undeveloped lots because, he claims, it was installed in violation of the deed restrictions. Even assuming this is true, it likely cannot be said that there is no adequate remedy at law. Caraboolad is also pursuing his claim for nuisance, which will afford him the opportunity to have the fact finder determine whether the Tahans' structure has had any effect on his property values or on the character of the community.

b.    Likelihood of Success on the Merits.

Even if irreparable harm would result absent an injunction, Caraboolad must also demonstrate a likelihood of success on the merits of his claims at trial. *Ingraham*, 441 A.2d at 693. The Law Court has characterized a "likelihood of success" as at least a substantial possibility and at most a probability of prevailing at trial. *Id.* As will be discussed below, Caraboolad cannot demonstrate that he is likely to prevail on most of his claims. The trial of this matter will focus on how the Tahans' structure will be characterized, which is a genuine issue of material fact bearing on whether a breach of the restrictive covenants occurred. With the exception of this claim, none of the other bases for relief raised by Caraboolad are legally viable. Because he cannot meet all four

5

criteria for a preliminary injunction, this Court need not address the remaining two elements. Caraboolad's request for injunctive relief is denied.

4.    Cross-Motion for Summary Judgment.

Tahan and the Alliance also move for summary judgment on all counts of Caraboolad's complaints against them.

a.    Declaratory Judgment Claim v. Alliance.

This Court has the power to issue declaratory judgments concerning legal rights. 14 M.R.S. § 5953 (2005). "An action for declaratory judgment is appropriate for the determination of the validity . . . of a deed." *Colquhoun v. Webber*, 684 A.2d 405, 411 (Me. 1996) (citations omitted). Seeking a declaratory judgment is a long-recognized method by which a person can obtain "a binding judicial determination of [his or her] legal rights" in property. *Id.*

Caraboolad contends that restrictive covenants in the Indian Ridge deeds bar the changes that the Alliance has made, and that the Alliance has acted ultra vires. "Construction of a deed . . . is a question of law." *River Dale Assn. v. Bloss*, 2006 ME 86, ¶ 6, 901 A.2d 809, 811. To interpret the language in a deed, this Court first determines its "plain meaning," but when the "language is ambiguous, then extrinsic evidence may be consulted to ascertain the grantor's intent." *Id.*

Contrary to Caraboolad's assertions, the plain language of the covenants in each deed allows amendments. Paragraph 17 of Caraboolad's deed to Lot 4[1] provides that "[t]he provisions hereof may from time to time be revised and/or amended upon the written consent of at least one record owner of not less than ten of said numbered lots." This exact provision is contained in all Indian Ridge deeds. When the Alliance sought

---

[1]    The deed to Lot 4 is recorded in the York County Registry of Deeds at Deed Book 9405, Page 186, and the language of ¶ 17 appears on Page 188. Caraboolad's deed to Lot 7 begins in Book 9405 at Page 192.

to amend the covenants in 2005 to reflect the current state of the community, it followed the proper procedures for submitting notice to residents and lot owners, including Caraboolad, who declined to participate in the process. The Alliance then held a vote at which the requisite number of property owners approved the changes. The Alliance's amendments, therefore, are permissible per the plain language of the Indian Ridge deeds.

Alternatively, Caraboolad argues that the Alliance's actions were void because it had been administratively dissolved for a brief period beginning in October 2005 due to its attorney's failure to file a registration statement. Even viewing the facts more favorably to Caraboolad, his argument fails because when the lot owners approved the amendments in September 2005, the Alliance apparently was in good standing. In addition, Maine law provides that when a corporation is reinstated, there is a relation back so that "the corporation resumes activities as if the administrative dissolution had not occurred." 13-B M.R.S.A. § 1114(3) (2005). Thus, the Alliance's actions were proper both because it was not dissolved at the time of the approval, and because, for any action occurring during a period of dissolution, such as recordation of the amendments, the law treats the Alliance as if it were always in good standing upon its reinstatement. For these reasons, and due to the language of the deeds, the Alliance's cross-motion for summary judgment is granted on Caraboolad's claim for declaratory judgment.

b.    Slander of Title Claim v. Alliance.

To prevail on a claim for slander of title, a plaintiff must prove that "(1) there was a publication of a slanderous statement disparaging [the] claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard of its falsity; and (4) the statement caused actual or special damages."

*Colquhoun*, 684 A.2d at 409. An action for slander of title is intended to protect a plaintiff from the use of language that could call his or her legal title into question. *Id.*

In this case, the slander claim fails because Caraboolad cannot demonstrate malice as a result of the recorded liens for unpaid assessments. The Alliance initiated these liens in accordance with its bylaws, which afford it the authority to pursue unpaid assessments when they are more than 30 days overdue. *See* Art. XII, § 4 of Bylaws.[2] One avenue open to the Alliance is the filing of a lien. *See Id.* § 5. As the Alliance was acting pursuant to the authority vested in it by the bylaws, it cannot be said to have acted maliciously or recklessly when recording the liens. The cross-motion is granted and judgment is entered in favor of the Alliance on this issue.

c.    Breach of Contract v. Alliance; Covenant Enforcement v. Tahans.

In an action for breach of contract, the plaintiff bears the burden to demonstrate: "(1) the existence of a valid and binding contract between the parties; (2) that one party breached its duties with respect to the contract; [and] (3) that the other party suffered damages resulting from the alleged breach." *Wheeler v. The Hartford Ins. Co.*, CUMSC-CV-2002-084 (Me. Super. Ct., Cum. Cty., Nov. 24, 2003) (Crowley, J.) (*citing Govan v. Trs. of Boston Univ.*, 66 F. Supp. 2d 74, 82 (D. Mass. 1999)). To establish a valid, enforceable contract, both parties must agree, in the contract or by implication, "to be bound by all its material terms," and the agreement must be "sufficiently definite" for a court to determine its meaning and the parties' respective responsibilities under the law. *Sullivan v. Porter*, 2004 ME 134, ¶ 13, 861 A.2d 625, 631.

With respect to the covenant enforcement action against the Tahans, which is essentially a breach claim, whether a breach of the covenants occurred when they built

---

[2]    The bylaws were recorded in the York County Registry of Deeds, beginning at Deed Book 9026, Page 78.

the new structure in 2001 is a factual issue that must be addressed at trial. *See Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 9, 760 A.2d 1041, 1044 (existence of a contract and any breach thereof are both factual questions). Whether the new structure was a carriage house or a garage is a genuine issue of material fact bearing on whether a breach occurred; therefore, their cross-motion on this issue is denied. With respect to the claim against the Alliance for breach as a result of failing to enforce some covenants and amending other covenants, the cross-motion is granted in favor of the Alliance for the reasons stated above.

d. Nuisance Claims v. Tahans and Alliance.

Maine law provides that a civil lawsuit may be brought when a landowner experiences an injury to his or her "comfort, property, or the enjoyment of his [or her] estate by a common and public or private nuisance." 17 M.R.S.A. § 2701 (2005). Also, at common law, a party may bring a private nuisance claim when there has been "an interference with the use or enjoyment of land." *Charlton v. Town of Oxford*, 2001 ME 104, ¶ 36, 774 A.2d 366, 377 (citation and internal quotations omitted). To establish a claim for common law nuisance, a party must show that:

(1) The defendant acted with the intent of interfering with the use and enjoyment of the land by those entitled to that use;

(2) There was some interference with the use and enjoyment of the land of the kind intended, although the amount and extent of that interference may not have been anticipated or intended;

(3) The interference that resulted and the physical harm, if any, from that interference proved to be substantial . . . The substantial interference requirement is to satisfy the need for a showing that the land is reduced in value because of the defendant's conduct; [and]

(4) The interference that came about under such circumstances was of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land.

9

*Id.* (citing W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts*, § 87 at 622-23 (5th ed. 1984)).

In this case, Caraboolad has failed to show substantial or unreasonable interference as a result of the Tahans' carriage house or garage, or as a result of the Alliance's amendment of covenants and restrictions. Even assuming that some interference with Caraboolad's use and enjoyment did occur due to either party's actions, as a matter of law, he has not demonstrated that any such interference rose to a level that was either substantial or unreasonable. This is especially so because both of Caraboolad's lots are undeveloped and he has never resided in the subdivision. Moreover, he has declined to become involved in the affairs of the community, including the decision to alter the covenants, or to support the community by paying all of the assessments that he owes, evincing a lack of connection to the community.

Thus, the Tahans' cross-motion for summary judgment is granted on both the statutory and common law nuisance claims. Similarly, judgment is granted for the Alliance on both of the nuisance claims against it, as its appropriate amendment of the covenants has not resulted in a substantial or unreasonable interference with Caraboolad's use or enjoyment of his property.

e.    Claim for Injunction v. Alliance and Tahans.

As irreparable harm to Caraboolad and the Trust has not been demonstrated by virtue of the installation of the Tahans' structure or the Alliance's amendment of the covenants, all defendants are entitled to judgment as a matter of law on this issue and Caraboolad's request for an injunction is denied. In light of the declaratory judgment in favor of the Alliance, the Court need not address Caraboolad's remaining claims against it for a receivership and strict accounting.

10

The entry will be as follows:

(1) This Court Denies Caraboolad's motion to strike but takes note of the objections.

(2) The Court Denies Caraboolad's motion for partial summary judgment on his claim for an injunction against the Tahans.

(3) The Court Grants the cross-motion for summary judgment in favor of the Alliance on all of Caraboolad's claims against it.

(4) The Court Grants the Tahans' cross-motion for summary judgment on both nuisance claims and the claim for injunctive relief, but Denies it on the claim for covenant enforcement.

Dated:        August / , 2007

G. Arthur Brennan
Justice, Superior Court

```
PLAINTIFF:
FRANK K N CHOWDRY ESQ
JENSEN BAIRD GARDNER & HENRY
PO BOX 4510
PORTLAND ME 04112-4510

DEFENDANTS:
SUSAN B DRISCOLL ESQ
BERGEN & PARKINSON
62 PORTLAND RD
KENNEBUNK ME   04043-6658
```

11