2002 ME 98

**James RUTLAND**

v.

**John MULLEN et al.**

Supreme Judicial Court of Maine.

Argued: Sept. 12, 2001.
Decided: June 20, 2002.

1. The Board of Education later rescheduled consideration to June 12, 2002.

David J. Perkins, (orally), Perkins Olson, P.A., Portland, for plaintiff.

Elliott L. Epstein, (orally), Isaacson & Raymond, Lewiston, John P. Burke, Kelly & Burke, LLC, Belfast, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.*

SAUFLEY, C.J.

[¶ 1] John and Brenda Mullen appeal from: (1) the grant of a partial summary judgment entered in the Superior Court (Waldo County, *Marden, J.*) declaring an easement on their land to benefit property owned by James Rutland, and (2) the subsequent judgment of the Superior Court (*Hjelm, J.*) entered upon a jury verdict awarding Rutland compensatory and punitive damages on his claims of tortious interference with a prospective economic advantage and nuisance. The Mullens contend that: (1) the court erred in granting a summary judgment declaring Rutland's easement because genuine issues of material fact exist regarding the extinguishment of the easement by abandonment; (2) insufficient evidence exists in the record to support the jury's verdict as to both liability and damages; and (3) the court abused its discretion in denying their motion for continuance of trial. We affirm the judgment in part and vacate in part.

## I. BACKGROUND

[¶ 2] In 1997, James Rutland purchased a parcel of property in Belfast. Abutting Rutland's parcel is property that has been owned by John and Brenda Mullen since 1971. Stephenson Lane travels from

---

* Wathen, C.J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

Route 1, through the Mullens' property, and then on to Rutland's property. The lower portion of the lane extends from Route 1 to the Mullens' residence. The upper portion of the lane extends north from the Mullens' residence to Rutland's property. Although the lower portion of the lane is a public way that is paved by the City of Belfast, the City no longer claims the upper portion as a public way because it has not maintained the upper portion since at least 1900.

[¶ 3] The Mullens allege that when they purchased their property in 1971, the upper portion of Stephenson Lane consisted of a "narrow trail or footpath up through the woods and was completely impassable by motor vehicle.... In other places, the trail traversed swampland." They also allege that since 1971, they have blocked the lane by using the mouth of the upper portion as a parking lot and leaving vehicles there "for months and months on end." Furthermore, they contend, neither Rutland nor any of his predecessors has used the upper portion to gain access to Route 1 since 1971.

[¶ 4] Although his property is also accessible by another road, Rutland planned to subdivide his property into affordable housing lots and to use Stephenson Lane to access the lots from Route 1. After John Mullen expressed his opposition to this plan and animosity between the parties grew, Rutland filed a complaint against the Mullens in the District Court (Belfast), eventually asserting ten counts relating to his rights in Stephenson Lane: tortious interference with a contract and/or tortious interference with a prospective economic advantage; declaratory judgment; injunctive relief; action to quiet title; implied easement; prescriptive easement; ease-

ment by estoppel; easement by necessity; nuisance; and trespass. The Mullens counterclaimed for a declaratory judgment regarding their interest in the upper portion of Stephenson Lane; a declaratory judgment regarding their interest in Back Belfast Road, which runs perpendicular to Stephenson Lane; defamation; trespass; and assault.[1] The case was removed to the Superior Court.

[¶ 5] Rutland moved for a partial summary judgment on all counts except for his claim of tortious interference, arguing that he enjoyed public and private easement rights in Stephenson Lane as a matter of law. The court (*Marden, J.*) granted Rutland's motion with respect to the declaratory judgment count and concluded that, although the upper portion of Stephenson Lane on the Mullens' property was not burdened by a public easement, Rutland did enjoy an implied private easement in the lane and that his private easement had not been abandoned.

[¶ 6] The case proceeded to trial on the remaining issues. Rutland claimed $190,911 in damages for direct costs, lost profits, increased risk, and attorney fees and professional expenses as a result of the Mullens' actions in preventing development of his property. He also sought punitive damages on his claim of tortious interference. Although the Mullens did not object to Rutland's testimony regarding damages, they did move for a judgment as a matter of law, arguing that the testimony was too speculative and insufficient to support a jury finding on damages. The Superior Court (*Hjelm, J.*) granted the Mullens' motion with regard to the increased risk and attorney fee claims, but denied the motion with regard to direct costs and lost profits.

---

1. The assault allegation stems from an altercation between Rutland and Mullen that occurred when Rutland tried to perform work on Stephenson Lane with a bulldozer. The district attorney's office did not pursue any charges as a result of the incident.

[¶ 7] The jury found for Rutland on the claims of nuisance and tortious interference with a prospective economic advantage, and awarded him $140,000 in undifferentiated compensatory damages. The jury also awarded $50,000 in punitive damages on the tortious interference claim. The court entered a judgment on the verdict and denied the Mullens' subsequent motion for judgment as a matter of law, for a new trial, and for remittitur. The Mullens appeal.

## II. DISCUSSION

### A. Abandonment

[¶ 8] The Mullens concede that Rutland's property was once benefitted by a private easement over Stephenson Lane. They contend, however, that the court's entry of a partial summary judgment was error because a genuine issue of material fact exists in the record regarding whether Rutland's easement was extinguished by abandonment.[2] We review the court's grant of a summary judgment in the light most favorable to the Mullens, as the non-prevailing party, to determine if any genuine issues of material fact exist for trial. *See Champagne v. Mid–Maine Med. Ctr.,* 1998 ME 87, ¶ 5, 711 A.2d 842, 844. The Mullens bear the burden of making a prima facie showing of each element of abandonment in order to survive Rutland's motion for summary judgment. *See id.* ¶ 9, 711 A.2d at 845.

[¶ 9] To make a prima facie showing of abandonment, the Mullens must establish: "(1) a history of nonuse coupled with an act or omission evincing a clear intent to abandon, or (2) adverse possession by the servient estate." *Phil-*

lips v. Gregg, 628 A.2d 151, 152 (Me.1993) (quoting *Canadian Nat'l Ry. v. Sprague,* 609 A.2d 1175, 1179 (Me.1992)). To prove an intent to abandon, the Mullens must show "unequivocal acts inconsistent with the further assertion of rights associated with the existence of the easement. . . . The acts asserted as evidence of abandonment must be decisive and conclusive and thereby indicate a clear intent to abandon the easement." *Id.* at 153 (quoting *Sprague,* 609 A.2d at 1179).

[¶ 10] An implied private easement is not abandoned by mere nonuse. *Bartlett v. City of Bangor,* 67 Me. 460, 466 (1878). Rather, acts adverse to the dominant estate must "indicate an intention that [the easement] shall never be used [for its intended purpose]." *Id.* For example, a six-year acquiescence to the erection of a garage blocking an easement is sufficient to indicate a clear intent to abandon, *Bolduc v. Watson,* 639 A.2d 629, 630 (Me. 1994), as is acquiescence to the construction of cottages across the area, *Chase v. Eastman,* 563 A.2d 1099, 1102 (Me.1989). In contrast, neither the building of a fence across an easement and using it for pasturage, *Bartlett,* 67 Me. at 466, nor a right-of-way overgrown with trees, blocked by rocks, and inaccessible by car for many years, *Phillips,* 628 A.2d at 153, is sufficiently adverse to constitute abandonment.

[¶ 11] In this case, the Superior Court correctly concluded that the Mullens' statement of material facts, taken in the light most favorable to them, does not make a prima facie showing of abandonment. It establishes only that the upper portion of Stephenson Lane has not been

---

2. We do not address the Mullens' contention—raised for the first time on appeal—that a genuine issue of material fact also exists regarding the scope of the easement. *See McAfee v. Cole,* 637 A.2d 463, 467 (Me.1994).

The Mullens do not cite to any point in the trial, nor could we find one, where they raised the argument that Rutland's anticipated use of the right-of-way would overburden the easement.

used or maintained for a number of years and that the Mullens have blocked the mouth of the upper portion with parked cars. Although these facts do make a prima facie showing of a history of nonuse of the easement, they do not establish the second required element of abandonment: an act or omission on the part of Rutland or his predecessors evincing a clear intent to abandon the easement.[3] Neither acquiescing to the parking of cars nor allowing the area to become overgrown with trees establishes an intent that the upper portion of Stephenson Lane *never* be used as a means to access Rutland's property from Route 1. *See Bartlett,* 67 Me. at 466; *see also Phillips,* 628 A.2d at 153. Thus, the Mullens' factual allegations are insufficient to support a finding of abandonment as a matter of law. Therefore, the Superior Court did not err when it entered a summary judgment in favor of Rutland declaring the continuing existence of a private easement.

**B. Sufficiency of the Evidence: Liability**

[¶ 12] The Mullens next contend that insufficient evidence exists in the record to support the jury's finding of liability with regard to both the tortious interference and nuisance claims. We will not overturn a jury verdict "unless no reasonable view of the evidence could sustain the verdict ...." *Merrill v. Sugarloaf Mountain Corp.,* 2000 ME 16, ¶ 14, 745 A.2d 378, 384 (quoting *Hansen v. Sunday River Skiway Corp.,* 1999 ME 45, ¶ 5, 726 A.2d 220, 222). A jury's verdict is supported by sufficient evidence as long as any competent evidence exists in the record on which the jury could base its findings. *State v. Bartlett,* 661 A.2d 1107, 1108 (Me.1995).

**1. Tortious Interference with a Prospective Economic Advantage**

[¶ 13] Tortious interference with a prospective economic advantage requires a plaintiff to prove: (1) that a valid contract or prospective economic advantage existed;[4] (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages.[5] *James v. MacDonald,* 1998 ME 148, ¶ 7, 712 A.2d 1054, 1057. The Mullens contend that no competent evidence exists on which the jury could find either the first or second elements of interference: prospective economic advantage or interference with that advantage through fraud or intimidation. We agree that insufficient evidence exists to support a finding that the Mullens interfered through fraud or intimidation, and therefore vacate the determination of liability on the count of tortious interference.

---

**3.** Neither does the Mullens' statement of material facts establish prima facie the nine elements of adverse possession: use that is (1) actual, (2) open, (3) visible, (4) notorious, (5) hostile, (6) under a claim of right, (7) continuous, (8) exclusive, and (9) for a period exceeding twenty years. *See Striefel v. Charles–Keyt–Leaman P'ship,* 1999 ME 111, ¶ 6, 733 A.2d 984, 989.

**4.** No evidence was presented at trial that would tend to show any type of interference with a contract.

**5.** We have, since at least 1897, maintained this general formula for proving tortious interference with a prospective economic advantage, including the element of fraud or intimidation. *Perkins v. Pendleton,* 90 Me. 166, 176, 38 A. 96, 99 (1897). The presence of fraud or intimidation is critical to a claim for tortious interference because it distinguishes unlawful conduct from conduct inherent in a healthy competitive economic environment. For the same reasons, we have never recognized a claim for negligent interference with an economic advantage. Negligent interference is also rejected in the RESTATEMENT (SECOND) OF TORTS § 766C (1979).

[¶ 14] We first address the requirements of proving tortious interference with a prospective economic advantage through fraud. The elements of interference by fraud are:

> (1) mak[ing] a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff.

*Petit v. Key Bank of Maine*, 688 A.2d 427, 430 (Me.1996) (quoting *Grover v. Minette–Mills, Inc.*, 638 A.2d 712, 716 (Me.1994)) (alteration in original); *see also* RESTATEMENT (SECOND) OF TORTS §§ 525–26 (1977).

[¶ 15] The evidence offered by Rutland at trial to show that the Mullens made a false representation included only his own testimony that the Mullens "falsely" claimed to own Stephenson Lane. The assertion of a legal right, however, is by itself insufficient as a matter of law to support a finding of interference by fraud. The Mullens cannot be said to have engaged in fraud simply because their claim of right was later proven invalid, nor did Rutland at any time rely on the Mullens' claim.

[¶ 16] We next address tortious interference through intimidation. Interference by intimidation involves unlawful coercion or extortion. BLACK'S LAW DICTIONARY 827 (7th ed.1999); *see also Pombriant v. Blue Cross/Blue Shield of Maine*, 562 A.2d 656, 659 (Me.1989). Again, a person who claims to have, or threatens to lawfully protect, a property right that the person believes exists cannot be said to have intended to deceive or to have unlawfully coerced or extorted another simply because that right is later proven invalid. *See* RESTATEMENT (SECOND) OF TORTS § 773 (1979). Rutland testified at trial that the Mullens insisted that Rutland ask permission to use the lane and indicated that they would continue to assert their right to exclude Rutland while the litigation was pending. Thus, the evidence offered to prove intimidation showed only that the Mullens intended to vigorously preserve their claim of right in Stephenson Lane.[6] The evidence is therefore also insufficient as a matter of law to support a finding of interference by intimidation.

[¶ 17] We therefore vacate the judgment with respect to the finding of tortious interference with a prospective economic advantage. Furthermore, because the award of punitive damages related only to the tortious interference count, we vacate the punitive damages award in its entirety and therefore do not address the Mullens' challenge to the legal sufficiency of the evidence supporting punitive damages.

## 2. Nuisance

[¶ 18] The Mullens also contend that no evidence was presented at trial to indicate that Brenda Mullen physically obstructed Rutland's right-of-way.[7] Contrary to the Mullens' assertions, there was testimony that "the Mullens" blocked Rutland's access to the lane with a car, a truck, a trailer, and logs, and that neither John nor Brenda Mullen agreed to Rutland's requests that these obstacles be removed. Thus, there is sufficient evidence

---

**6.** Furthermore, John Mullen's allegation that Rutland assaulted him with the bulldozer in no way supports Rutland's claim that Mullen intimidated him.

**7.** The Mullens do not challenge the jury's determination that John Mullen is liable for nuisance.

upon which the jury could find that Brenda Mullen physically obstructed the lane and we do not disturb that finding.[8]

### C. Sufficiency of the Evidence: Compensatory Damages

[¶ 19] We now address the jury's award of compensatory damages. The jury was presented with evidence and argument regarding two torts: tortious interference with a prospective economic advantage and nuisance. We have determined that insufficient facts exist to find liability for one, tortious interference, but that the jury's finding regarding the other tort, nuisance, is supported by the evidence. Because the award of compensatory damages did not differentiate between the counts of tortious interference and nuisance, however, and because we conclude that insufficient evidence exists to support the tortious interference claim, we must vacate the damages in whole and remand for trial on the issue of permissible components of compensatory damages for the claim of nuisance. *See Withers v. Hackett,* 1999 ME 117, ¶ 8, 734 A.2d 189, 191.

■■■■ [¶ 20] We address the legal issues regarding the compensatory damages award because these issues are likely to reappear on remand. *See Irish v. Gimbel,* 1997 ME 50, ¶ 1, 691 A.2d 664, 667. Our standard of review is "highly deferential" because "[t]he assessment of damages is within the sole province of the factfinder." *James,* 1998 ME 148, ¶ 11, 712 A.2d at 1058. Therefore, we will disturb a jury's award of damages "only when it is plain that there is no rational basis upon which the amount of the award may be supported," that is, when there is no compe-

tent evidence in the record to support the award. *Id.* at 1058–59.

#### 1. Lost Profits

■■■ [¶ 21] At trial, Rutland testified that he planned to subdivide his property into thirty lots and sell five lots per year at $20,000 per lot yielding a profit of $10,500 per lot. He also testified that his research with real estate agents confirmed that $20,000 was a reasonable price for his lots. On that basis, he claimed to have lost $108,750 in prospective profits. Rutland's asserted qualifications for making such a determination include his engineering background, his career at the National Aeronautics and Space Administration and with Delta Airlines, his experience in renovating a farm, his development of airplane hangars, his development of land in Alabama, his careful research of his right of access, the City's positive responses to his development plans, his understanding that Belfast needs affordable housing, a soil analyst's determination that the soil is suitable for septic systems, and his acquisition of heavy equipment and a gravel pit to complete the development project.

■■■ [¶ 22] "Prospective profits are allowable only if they can be estimated with reasonable certainty." *Ginn v. Penobscot Co.,* 334 A.2d 874, 887 (Me.1975). Although opinion evidence regarding lost profits is admissible, it must be an informed opinion based on facts that the fact-finder can evaluate. *Id.* Thus, we have held insufficient a business owner's unsupported assertion that his injury led to $20,000 in lost profits. *Id.* Similarly, we held that a golf professional's testimony regarding the amount of profits he lost in

---

**8.** The mere obstruction of a way, although demonstrating the elements of nuisance, is not, by itself, sufficient to support the elements of tortious interference with a prospective economic advantage. Thus, the conclu-

sion that the evidence supports a finding of nuisance is not inconsistent with the conclusion that the evidence does not support a finding of tortious interference with a prospective economic advantage.

one year was insufficient even though it was supported by the previous year's tax return because it did not address the volume of business during the actual year in dispute. *Eckenrode v. Heritage Mgmt. Corp.*, 480 A.2d 759, 765–66 (Me.1984).

[¶ 23] Although Rutland's past experience is varied, he has never engaged in subdivision or real estate development, nor did he present evidence of profit data from similar projects or the testimony of any witness who would be qualified to render such an opinion. Thus, the jury's award of lost profits was supported only by general information Rutland received from real estate agents indicating that $20,000 was a reasonable price for the lots, as well as Rutland's speculation regarding his development costs. The evidence regarding Rutland's likely development profits is insufficient as a matter of law to support the jury's award of compensatory damages for lost profits. Therefore, the court erred in permitting the jury to consider damages for lost profits.

### 2. Direct Costs

■ [¶ 24] Rutland maintains that he lost $61,800 in direct costs as a result of the Mullens' actions, including $16,000 for mortgage interest paid for the four-year delay caused by the Mullens and $42,400 for interest and depreciation costs incurred on the heavy equipment Rutland purchased for the development project.[9] Rutland estimated an interest rate of ten percent on the mortgage and equipment financing, and claims that, based on his experience in determining heavy equipment depreciation, a rate of ten percent is conservative.

[¶ 25] Although a correct measure of damages may not be based on conjecture or speculation, an informed estimate based on actual market rates may form a sufficient basis for an award of damages. *Wendward Corp. v. Group Design, Inc.*, 428 A.2d 57, 61–62 (Me.1981). We reject the Mullens' contention that damages may not be based on estimated interest and depreciation rates, and conclude that the court did not err in permitting the jury to consider such evidence. Rutland's claim for direct costs damages is therefore supported by the evidence. Because the jury's award of damages did not differentiate between the tortious interference and nuisance claims, however, nor between direct costs and lost profits, we vacate the entire award of compensatory damages and remand for retrial of the issue of compensatory damages on the nuisance claim only with respect to the direct costs component of compensatory damages.[10]

### D. Continuance

[¶ 26] Finally, the Mullens contest the court's denial of their motion for continuance of trial. The court did not exceed the bounds of its discretion in denying the motion given the considerable length of time that the case had been pending. *See Waxler v. Maine Real Estate Comm'n*, 1998 ME 65, ¶ 4, 708 A.2d 663, 665.

---

9. The Mullens' contention that Rutland was not deprived of the use of his heavy equipment and, therefore, could not be awarded damages for the loss of the equipment's use also fails. Rutland did not claim or receive damages for the loss of the use of the equipment for the full four years of the delay, but merely claims the loss of the equipment for the single year it took him to put the equipment to another use.

10. Because Rutland had a full opportunity to establish a claim for lost profits at the first trial, and failed to do so, those damages are unavailable at the trial on remand. *See, e.g., Great Pines Water Co., Inc. v. Liqui–Box Corp.*, 203 F.3d 920, 924 (5th Cir.2000); *see also* 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2814 (2d ed.1995) (discussing partial new trials).

The entry is:

The Superior Court's judgment of liability for tortious interference with a prospective economic advantage is vacated and remanded for entry of a judgment finding no liability on this count. The court's entry of damages is also vacated and remanded for further proceedings consistent with this opinion. The court's judgment, including its entry of a partial summary judgment in favor of Rutland, is affirmed in all other respects.