STATE OF MAINE                                      SUPERIOR COURT
                                                      CIVIL ACTION
YORK, ss.                                        DOCKET NO. CV-10-102


ENVIRONMENTAL POWER
CORPORATION,

            Plaintiff


v.                                                      ORDER


DONALD A. LIVINGSTON,

            Defendant


This action arises from three secured, payable-on-demand promissory notes defendant Donald Livingston gave to plaintiff Environmental Power Corporation ("EPC"). EPC filed its complaint to foreclose its security interest and collect payment on the notes. The plaintiff's motions to dismiss defendant Livingston's counterclaims and attach $384,198.31 are before the court.

## BACKGROUND

Plaintiff EPC is a Delaware corporation headquartered in Tarrytown, New York. (Pl.'s Compl. ¶ 1.) Mr. Livingston is a former executive officer of EPC and currently resides in York, Maine. (Pl.'s Compl. ¶ 2; Def.'s Countercl. ¶ 1.) Mr. Livingston executed three promissory notes in favor of EPC between 1993 and 2001, reflecting an aggregate principal amount of $528,280.50. (Pl.'s Compl. ¶¶ 4–6.) All three notes are payable on demand, and all contain choice of law provisions. (Pl.'s Compl. ¶ 7; Def.'s Countercl. ¶¶ 28, 31.) The first note states that it will be governed by the laws of Massachusetts,

while the second and third notes invoke the laws of New Hampshire. (Def.'s Countercl. ¶¶ 28, 31.)

The notes are currently secured by 165,000 shares of EPC stock held by EPC in Mr. Livingston's name. (Pl.'s Compl. ¶ 11.) The notes reference a larger number, but the shares have been reduced through reverse stock splits. (Pl.'s Compl. ¶ 11 n.1.) EPC claims that Mr. Livingston owed $410,498.31 as of September 20, 2009, with interest accruing thereafter. (Pl.'s Compl. ¶ 8.) EPC mailed Mr. Livingston a demand letter on October 15, 2009, but the defendant has not tendered payment. (Pl.'s Compl. ¶¶ 9–10.)

Mr. Livingston contends that the loans evinced by the promissory notes were in fact a sham. He explains that he and other executives at EPC received employee incentive options allowing them to acquire shares of EPC on favorable terms as part of their total compensation. (Def.'s Countercl. ¶ 2.) As EPC's publicly traded shares rose to certain levels, Mr. Livingston and other executives sought to exercise these options. (Def.'s Countercl. ¶ 3.) This created a problem for EPC, however, because it would force EPC to issue additional capital stock and dilute its market value. (Def.'s Countercl. ¶ 4.)

To avoid this scenario, Mr. Livingston claims that EPC, through its board of directors, proposed a transaction whereby the company would lend the executives the funds necessary to exercise their options, and in exchange EPC would take a security interest in the shares and retain their physical possession. (Def.'s Countercl. ¶ 5.) Mr. Livingston contends that the resulting transaction was revenue neutral when conducted, with any gain or loss deferred until the loans were satisfied. (Def.'s Countercl. ¶ 7.) He also contends that the parties understood that the liquidation of the secured shares would satisfy the notes. (Def.'s Countercl. ¶ 8.)

Mr. Livingston separated from EPC in approximately January 2007. (Def.'s Countercl. ¶ 1.) He allegedly owned 435,000 unencumbered shares of EPC in addition

2

to the 165,000 shares securing the notes. (Def.'s Countercl. ¶ 9.) That year, EPC shares reached a high value of approximately $9.50 per share. (Def.'s Countercl. ¶ 10.) After leaving the company, Mr. Livingston approached EPC's board of directors to discuss a block transfer of his unencumbered shares. (Def.'s Countercl. ¶ 11.) The board refused to authorize the transfer on the ground that Mr. Livingston was a corporate insider. (Def.'s Countercl. ¶ 11.) EPC's share value began to tumble shortly thereafter. (Def.'s Countercl. ¶ 12.) As of April 1, 2010, the stock was trading at approximately $0.22 per share. (Pl.'s Compl. ¶ 17.)

EPC filed a verified complaint and motion to attach on April 8, 2010. The complaint was sworn to and subscribed by EPC's senior vice president and chief financial officer so that it could also serve as an affidavit supporting the motion to attach. The complaint lists four claims. Count I seeks to enforce the notes by their terms, Count II seeks to foreclose the security interest pursuant to 11 M.R.S. § 9-1601, Count III alleges unjust enrichment, and Count IV asserts a claim for money lent. Mr. Livingston has filed a counterclaim, also with four counts. Count I alleges tortious interference with an economic advantage, Count II asserts breach of fiduciary duty, and Counts III and IV allege violations of Massachusetts's and New Hampshire's consumer protection laws. On June 8, 2010, EPC filed this motion to dismiss all of the defendant's counterclaims.

## DISCUSSION

1.      Plaintiff's Motion to Dismiss Counterclaims

"A motion to dismiss tests the legal sufficiency of the complaint." *Heber v. Lucerne-in-Maine Village Corp.*, 2000 ME 137, ¶ 7, 755 A.2d 1064, 1066 (quoting *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994)). The Court examines "the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action

3

or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *McAfee*, 637 A.2d at 465). "For purposes of a 12(b)(6) motion, the material allegations of the complaint must be taken as admitted." *McAfee*, 637 A.2d at 465. "Dismissal is warranted when it appears beyond a doubt that the plaintiff is entitled to no relief under any set of facts that [s]he might prove in support of [her] claim." *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A.2d 1244, 1245–46.

Mr. Livingston's Count I alleges that EPC tortiously interfered with an economic advantage. To prove tortious interference, Mr. Livingston must prove: "(1) that a valid contract or prospective economic advantage existed; (2) that [EPC] interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages." *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 31, 915 A.2d 400, 408. (quoting *Rutland v. Mullen*, 2002 ME 98, ¶ 13, 798 A.2d 1104, 1110) (quotations omitted). The gist of his claim is that EPC wrongfully prevented him from selling his shares in 2007.

While Mr. Livingston has not alleged the existence of any contract, his investment interest in his shares probably does constitute a prospective economic advantage. *See Rutland*, 2002 ME 98, ¶¶ 4, 12–13, 798 A.2d at 1108, 1110 (investment interest in developable land was a prospective economic advantage). However, Mr. Livingston has not adequately pleaded any facts supporting the elements of fraud. *See id.* ¶ 14, 798 A.2d at 1111 (elements of fraudulent interference identical to elements of fraud at common law). His claim must therefore be based on intimidation.

"Interference by intimidation involves unlawful coercion or extortion." *Id.* ¶ 16, 798 A.2d at 1111 (citing Black's Law Dictionary 827 (7th ed. 1999)). Intimidation "exists wherever a defendant has procured a breach of contract by 'making it clear' to the party with which the plaintiff had contracted that the only manner in which that party could

4

avail itself of a particular benefit of working with defendant would be to breach its contract with plaintiff." *Currie*, 2007 ME 12, ¶ 31, 915 A.2d at 408 (citing *Pombriant v. Blue Cross / Blue Shield of Maine*, 562 A.2d 656, 659 (Me. 1989)). Mr. Livingston has not alleged any facts indicative of intimidation. Read generously, his complaint shows that EPC's board of directors prevented him from selling his shares of EPC stock for unknown reasons. Assuming they did so wrongfully, the allegations still do not show coercion or extortion. There is no indication that EPC threatened to impose harm on, or withhold a benefit from, any person in order to make another behave in a certain way. Since Mr. Livingston has failed to plead any indication of fraud or intimidation, Count I of his counterclaim will be dismissed.

Count II is titled "lender liability," but it essentially sets forth a claim for breach of fiduciary duty. (Def.'s Countercl. ¶ 25.) Mr. Livingston claims that he and EPC shared a relationship of trust and confidence vesting EPC with a fiduciary duty to protect his interests. EPC allegedly breached this duty by waiting to foreclose on its security interest until after the value of the collateral had fallen.

Mr. Livingston does not contend that there was a fiduciary relationship between EPC and himself per se. Instead, he premises the duty's existence on a supposed special relationship. A fiduciary duty may arise where there is:

> (1) "the actual placing of trust and confidence in fact by one party in another," and (2) "a great disparity of position and influence between the parties" at issue. . . . A fiduciary duty will be found to exist, as a matter of law, only in circumstances where the law will recognize both the disparate positions of the parties and a reasonable basis for the placement of trust and confidence in the superior party in the context of specific events at issue. . . . [B]ecause the law does not generally require individuals to act for the benefit of others, the factual foundations of an alleged fiduciary relationship must be pled with specificity.

*Bryan R. v. Watchtower Bible & Tract Soc'y, Inc.*, 1999 ME 144, ¶¶ 19–21, 738 A.2d 839, 846 (quoting *Morris v. Resolution Trust Corp.*, 622 A.2d 708, 712 (Me. 1993)) (citation omitted).

5

Mr. Livingston claims that EPC was advising him when he executed the three promissory notes, and that he placed trust and confidence in the corporation. In *Bryan R. v. Watchtower Bible & Tract Soc'y, Inc.*, the Law Court found that the plaintiff's similarly bare recitations that he'd "placed 'substantial trust and confidence' in the elders of the church and trusted them 'to protect him and guide him'" were vague and "wholly insufficient to make out a claim of a special relationship" giving rise to a fiduciary duty. *Id.* ¶ 22, 738 A.2d at 847.

Looking past the specificity requirement, Mr. Livingston alleges that he executed the promissory notes as part of his executive compensation package. He does not allege that he suffered from diminished capacity or that he and EPC were in grossly disparate bargaining positions. The allegations show a situation where a senior corporate executive was negotiating his compensation with his employer. Presumably, Mr. Livingston was looking out for his own interests and would not blindly place his trust and confidence in EPC. Furthermore, as a sophisticated businessperson Mr. Livingston no doubt understood the ramifications of the notes when he signed them.

Mr. Livingston has not pleaded the existence of a special relationship with specificity, and the facts he has alleged are insufficient to give rise to a fiduciary duty under the circumstances. Count II of his counterclaim will be dismissed.

Counts III and IV invoke the consumer protection laws of Massachusetts and New Hampshire pursuant to the notes' choice of laws provisions. Massachusetts General Law ch. 93A, section 2, states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." M.G.L. Ch. 93-A, § 2(a). The law defines trade and commerce broadly consisting of "advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or

mixed, any security . . . and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate . . . ." M.G.L. Ch. 93-A, § 1(b). New Hampshire's statue is materially identical to Massachusetts's, and the state's courts look to Massachusetts for guidance when interpreting it. *Chase v. Dorais*, 448 A.2d 390, 391–92 (N.H. 1982); N.H. R.S.A. 358-A:1–2.

Mr. Livingston contends that the transactions forming the basis of this dispute constitute "trade" or "commerce" within the meaning of the consumer protection laws and that EPC engaged in unfair or deceptive acts to his detriment. As noted above, this case is fundamentally arises from a compensation arrangement between Mr. Livingston and his then-employer. When interpreting its consumer protection statute, the Supreme Court of Massachusetts has held that "[a]n employee and an employer are not engaged in trade or commerce with each other." *Manning v. Zuckerman*, 444 N.E.2d 1262, 1265 (Mass. 1983). While the terms are broadly defined and somewhat ambiguous, the Court determined that the statute contemplates business transactions between commercial entities and the general public but not transactions between employers and employees. *Id.*

Mr. Livingston executed the promissory notes as part of his compensation package with EPC. Following *Manning*, the transactions at the basis of this suit are not "trade" or "commerce" under Massachusetts's consumer protection statute and Count III will be dismissed. While New Hampshire has not formally addressed this issue, it defines "trade" and "commerce" in the same way as Massachusetts. *Chase*, 448 A.2d at 391. Absent contrary authority, Count IV will be dismissed as well.

2.      Plaintiff's Motion for Attachment and Trustee Process

EPC seeks to attach $384,198.31 of Mr. Livingston's property. This amount represents the $410,498.31 due on the notes, minus the estimated value of the secured

7

shares, $36,300. A plaintiff may attach a defendant's property "to satisfy the judgment for damages and costs which the plaintiff may recover" if the plaintiff can show "that it is more likely than not that [he] will recover judgment . . . in an aggregate sum equal to or greater than" the amount to be attached. M.R. Civ. P. 4A(a), (c); M.R. Civ. P. 4B(a), (c).

EPC has presented copies of the promissory notes, the demand letter, and both a sworn affidavit and the verified complaint from its senior vice president and chief financial officer setting forth the default and the amount due with reasonable certainty. This evidence is sufficient to establish that EPC is likely to succeed on the merits of its claims.

## CONCLUSION

1) Plaintiff EPC's motion to dismiss defendant Livingston's counterclaims is Granted, without prejudice.[1]

2) Plaintiff EPC's Motion for Attachment is Granted.

Dated: July 28, 2010

G. Arthur Brennan
Justice, Superior Court

ATTORNEY FOR PLAINTIFF:
JEFFREY T. PIAMPIANO, ESQ.
DRUMMOND WOODSUM & MACMAHON
84 MARGINAL WAY SUITE 600
PORTLAND ME   04101

ATTORNEY FO DEFENDANT:
CHRISTOPHER P. MULLIGAN, ESQ.
BOSEN & SPRINGER PLLC
ONE NEW HAMPSHIRE AVE, SUITE 215
PORTSMOUTH NH   03801

---

[1] Generally, when a claim is dismissed under Rule 12(b)(6) an opportunity is offered to amend the claim to survive the motion. By dismissing the claims asserted in the counterclaim without prejudice, the Defendant may re-assert a claim(s) if evidence develops to support such claim(s).

8