ALEXANDER, J.,
concurring.
[¶ 27] I concur in the result to vacate the trial court’s decision, but, respectfully, I do not concur in the Court’s reasoning, and I write to ensure that the Court’s analysis is not over-read. This action involves a standard contract dispute. The Court’s opinion, based entirely on the law regarding the duty to defend, should not be read to support any interpretation of law beyond what is necessary to decide this case. In other words, it should not be read to allow every two-party contract dispute to. include a tortious interference with an advantageous relationship' claim with a potential for recovery of emotional distress damages.
I. CASE HISTORY
[¶ 28] For purposes of this duty to defend action, there is no dispute about the essential facts. Dawn Harlor and the Primes had an agreement allowing the Primes to use Harlor’s dock, subject to a boat size limit. The Primes made some improvements to Harlor’s dock that, the Primes contended, was consideration for an agreement by Harlor to allow larger boats to use the dock.
[¶29] The Primes’ complaint alleged that when Harlor later sold the dock, she refused to honor the terms of the agreement regarding improvements to the dock and made false statements to obtain the Primes’ agreement to a written “Confirmation of Easement” that may not have reflected the removal' of the boat size re *803 striction. The Primes further alleged that following Harlor’s sale of the dock, Harlor refused to confirm the Primes’ right to use the dock for larger boats and made false statements regarding the Primes’ right to use the dock. Harlor’s actions, the Primes alleged, resulted in uncertainty regarding their right to use the dock and prevented the Primes from selling their property with value added from the enhanced use easement that the Primes alleged was established by contract.
II. THE TORTIOUS INTERFERENCE CLAIM
[¶ 30] We have outlined the elements of a claim for tortious interference with a contract or advantageous relationship, including the essential fraud or intimidation elements, in numerous opinions dating back nearly 120 years. Our first opinion recognizing an action for tortious interference with a contract—there a contract for employment—was Perkins v. Pendleton, 90 Me. 166, 38 A. 96 (1897). In Perkins, after an extensive review of precedents from other jurisdictions, we approved a tortious interference action, using language similar to language we use today.
■.[W]herever a person, by means of fraud or intimidation, procures, either the breach of a contract or the discharge of a plaintiff, from an employment, which but for such wrongful interference would have continued, he is liable in damages for such injuries as naturally result therefrom ....
Id. at 176, 38 A. at 99.
[¶ 31] Later opinions addressing the elements of a claim for tortious interference with a contract or advantageous relationship include: Currie v. Industrial Security, Inc., 2007 ME 12, ¶¶ 31-34, 915 A2d 400; Rutland v. Mullen, 2002 ME 98, ¶¶ 13-15, 798 A.2d 1104; James v. MacDonald, 1998 ME 148, ¶¶ 6-7, 712 A.2d 1054; Petit v. Key Bank of Me., 688 A.2d 427, 430 (Me. 1996); Barnes v. Zappia, 658 A.2d 1086, 1090 (Me. 1995); Pombriant v. Blue Cross/ Blue Shield of Maine, 562 A.2d 656, 659 (Me. 1989); MacKerron v. Madura, 445 A.2d 680, 683 (Me. 1982); Taylor v. Pratt, 135 Me. 282, 284, 195 A. 205, 206 (1937).
[¶ 32] In each case from Perkins forward, the plaintiff had a contractual relationship with or anticipated a beneficial economic relationship with an identified third party. The relationships with the identified third parties included: employment, personal or professional services, or a contract or anticipated contract for purchase or sale of goods or services. The plaintiffs action was then brought against the defendant for alleged interference with the plaintiffs contractual or anticipated beneficial economic relationship with the identified third party.
[¶ 33] In Currie, we outlined the elements of a tortious interference claim as follows: “Tortious interference with a prospective economic advantage requires a plaintiff to prove: (1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages.” 2007 ME 12, ¶ 31, 915 A.2d 400 (quoting Rutland v. Mullen, 2002 ME 98, ¶ 13, 798 A.2d 1104).
[¶ 34] Our precedents advise that a person engages in fraud when that person (here, allegedly, Harlor): (1) makes a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purpose of inducing another to act or to refrain from acting in reliance on it; and (5) the third person (here, a prospective purchaser unknown to Harlor) justifiably relies on the representation as true and acts upon it, damaging the plaintiff *804 (here, the Primes). Petit, 688 A.2d at 430. There is no allegation that Harlor directly communicated with any prospective purchaser. Harlor, never having known or communicated with prospective purchasers, could not have committed the fraud element of the Primes’ claim.
[¶ 35] Our precedents advise that a person engages in intimidation when that person (here, allegedly, Harlor): (1) communicates a statement or threat to a third person (here, a prospective purchaser unknown to Harlor); (2) that suggests adverse physical, economic, or emotional consequences to the third person; (3) for the purpose of inducing the third person to act or fail to act regarding the plaintiff (here, the Primes); and (4) the third person acts based on the statement or threat, damaging the plaintiff. See Currie, 2007 ME 12, ¶¶ 31-33, 915 A.2d 400. In Pombriant, we held that intimidation exists wherever a defendant has procured a breach of contract by “making it clear” to the third party with whom the plaintiff had contracted that the only manner in which that party could avail itself of a particular benefit of working with the defendant would be to breach the third party’s contract with plaintiff. 562 A.2d at 659.
[¶ 36] Harlor, never having known or communicated with prospective purchasers, could not have committed the intimidation element of the Primes’ tortious interference claim. On the facts established by the pleadings, there was no basis in law for the Primes to maintain a tortious interference claim against Harlor.
III. THE DUTY TO DEFEND OBLIGATION
[¶ 37] To determine whether there is a potential for insurance coverage, we compare the underlying complaint with the coverage provided “in the insurance policy.” Mitchell v. Allstate Ins. Co., 2011 ME 133, ¶ 9, 36 A.3d 876. An insurer has a duty to defend only “if there is any potential that facts ultimately proved could result in coverage,” Id. ¶ 10 (emphasis in original), irrespective of whether the insurer is ultimately required to indemnify the insured, York Ins. Group of Me. v. Lambert, 1999 ME 173, ¶ 8, 740 A.2d 984.
[¶ 38] The Primes and Harlor were engaged in an ordinary contract dispute over whether the Primes’ improvements to the dock entitled them to the benefit of a bargain that expanded their right to use the dock. Emotional distress damages are generally not recoverable for breach of contract claims, because recovery is limited to those harms that were reasonably anticipated by the parties at the time the contract was formed and would be expected to flow naturally from breach of the contract. Rubin v. Matthews Int'l Corp., 503 A.2d 694, 696 (Me. 1986).
[¶ 39] Exceptions to this rule exist only when breach of the contract results in bodily harm, or when severe emotional distress is “a particularly likely result of a breach,” such as “contracts for the carriage and proper disposition of dead bodies and ... contracts for the delivery of messages concerning death.” McAfee v. Wright, 651 A.2d 371, 372-73 & n.4 (Me. 1994). See also In re Hannaford Bros. Co. Customer Data Sec. Breach Litig., 2010 ME 93, ¶ 15, 4 A.3d 492 (“[E]motional distress suffered as a result of breach of contract is ordinarily not recoverable unless it is accompanied by physical injury or it results in serious emotional disturbance due to the nature of the contract.” (citing Marquis v. Farm Family Mut. Ins. Co., 628 A.2d 644, 651 (Me. 1993) and other precedents)).
[¶40] Here, the Primes did not seek emotional distress damages. Thus, Arnica has no duty to indemnify for any amounts *805 paid in the settlement. However, the Primes did include a tortious interference claim in their complaint.
[¶ 41] I concur that a duty to defend exists based on the potential for recoverable damages. Likewise, I concur that courts should not engage in fact-finding when determining whether an insurer has a duty to defend its insured. An insurer has a duty to defend a baseless claim, if covered by the terms of its homeowner’s policy, because the alternative may leave the homeowner defenseless and subject to default for that baseless claim.
[¶ 42] But that duty to defend does not extend to other associated claims not covered by the homeowner’s policy. Here, because the tortious interference claim was asserted, Arnica had a limited duty to appear and defend the action as long as it included the tortious interference claim, but with a reservation of rights that did not obligate Arnica to defend or indemnify the other, valid contract claims that apparently led Harlor to settle the action with the Primes.
[¶ 43] I agree with the trial court that there was no meaningful possibility—in fact no possibility at all—that the underlying suit could result in damages covered by the Arnica policy. The best practice would have been to separate out consideration of the tortious interference claim and have the court proceed to determine Arni-ca’s responsibility to defend that claim, presumably by a quick and successful motion to dismiss.
[¶ 44] Any remand should limit the separate duty to indemnify to this narrow assessment of responsibility for attorney fees and costs of defense. It should not seek assessment of responsibility to defend the entire contract-based suit, and it should not change our law to remove the necessity of identifying a third party whose relationship was interfered with in a tortious interference claim.