STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-18-300

SEBAGO LAKE LODGE CONDO
OWNERS ASSOC.,

Plaintiff

v.

HELEN M. HERMAN, TRUSTEE OF
THE HELEN M. HERMAN LIVING
TRUST,

Defendant

ORDER ON MOTION FOR SUMMARY
JUDGMENT

Before the court is plaintiff/counterclaim defendant Sebago Lake Lodge Condominiums Owners Association ("plaintiff")'s motion for summary judgment on the counts in its complaint and on defendant/counterclaim plaintiff Helen Herman, trustee of the Helen M. Herman Living Trust ("defendant")'s counterclaims. For the following reasons, the motion is granted in part and denied in part.

Factual Background

Plaintiff is a Maine non-profit corporation acting as the condominium association for Sebago Lake Lodge Condominiums in Standish, Maine. (Pl.'s S.M.F. ¶ 1.) Defendant is a living trust and the owner of real property located at 661 Whites Bridge Road, Unit #14, Standish, Maine 04084. (*Id.* ¶¶ 3-4.)

Plaintiff alleges that it holds a lien against Unit #14 for unpaid assessments, interest, late fees and attorney's fees. (*Id.* ¶¶ 8, 18.) Plaintiff seeks to foreclose on Unit #14 and collect $16,587.69 for alleged nonpayment of dues, late fees and interest. (Mot. Summ. J. 3.) Plaintiff also

STATE OF MAINE
Cumberland, ss. Clerk's Office

MAY 0 4 2021

RECEIVED


seeks to collect additional dues, late fees and interest as it continues to accrue. (*Id.*) Finally, plaintiff seeks attorney's fees pursuant to 33 M.R.S. § 1603-116(g). (*Id.* at 4.)

Defendant contends that she is not obligated to pay these amounts. She disputes that she owes any dues because she alleges that none of the assessments were imposed pursuant to budgets adopted in conformance with the requirements of plaintiff's declaration and bylaws. (Def.'s Additional S.M.F. ¶¶ 1-8.) Defendant alleges that plaintiff violated the procedures described in the bylaws for the adoption of budgets by failing to approve the proposed budget in advance, by failing to failing to give proper notice to unit owners, by making modifications to the budget on the floor of meetings held to ratify proposed budgets and by failing to assess charges for the common elements in equal shares throughout the year. (*Id.* ¶¶ 2-9.) Defendant further alleges that many of the charges plaintiff seeks to collect were imposed through unauthorized assessments for various projects that were not properly budgeted. (*Id.* ¶¶ 24-33.)

Defendant has counterclaimed that her affirmative defenses also constitute violations of the MCA by plaintiff. She argues that plaintiff has also violated the MCA by charging excessive late fees and acting in bad faith. (Opp. 17.) In addition, she has argued that plaintiff violated the Unfair Trade Practices Act ("UTPA") by overcharging her for electricity, storing equipment on her property without permission and charging excessive late fees. (*Id.* at 15.) Finally, she alleges that she had a contract for the sale of Unit #14 that plaintiff interfered with by asserting that it had a lien against the unit. (*Id.* at 17.)

Procedural Background

Plaintiff filed a complaint for foreclosure against defendant on December 6, 2018 alleging three counts: count I, foreclosure; count II, breach of contract; and count III, personal action for money owed. Defendant answered on February 4, 2019. Defendant amended her answer on May

2

23, 2019 and added five counterclaims: count I, violation of Maine Unfair Trade Practices Act; count II, breach of fiduciary duty; count III, violation of the Maine Condominium Act; count IV, tortious interference; and count V, unjust enrichment. Plaintiff answered defendant's counterclaim on June 20, 2019.

Plaintiff filed a motion to dismiss defendant's counterclaims I-IV pursuant to M.R. Civ. P. 12(b)(6) on June 20, 2019. Defendant opposed plaintiff's motion to dismiss on August 14, 2019. Plaintiff replied on October 4, 2019.

While plaintiff's motion to dismiss was pending, plaintiff filed a motion for summary judgment on all claims and counterclaims on November 13, 2019. Defendant opposed plaintiff's motion for summary judgment on December 11, 2019. Plaintiff replied on December 20, 2019.

The court ruled on the motion to dismiss on March 6, 2020, dismissing defendant's counterclaim as to count I and part of count III. Count II was dismissed without prejudice by agreement.

Standard

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy v. City Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted).

"Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." M.R. Civ. P. 56(h)(4). In order to controvert an opposing party's factual statement, a party must

3

"support each denial or qualification by a record citation." M.R. Civ. P. 56(h)(2). "Assertion of material facts must be supported by record references to evidence that is of a quality that would be admissible at trial." *HSBC Mortg. Servs. v. Murphy*, 2011 ME 59, ¶ 9, 19 A.3d 815.

Discussion

The issues on this motion for summary judgment are:

(1) whether there is an issue of material fact as to whether defendant owes any amounts to the Association;

(2) if not, whether there is an issue of material fact as to the amounts owed; and

(3) whether there are issues of material fact pertaining to any of defendant's remaining counterclaims.

Validity of Budget

Defendant argues that there is an issue of material fact as to whether she owes any amounts because plaintiff has failed to establish that it passed a valid budget for the years at issue in this case. The Maine Condominium Act ("MCA") provides that an owners association may, subject to the provisions of the declaration, "[a]dopt and amend budgets for revenues, expenditures and reserves and collect assessments for common expenses from unit owners." 33 M.R.S. § 1603-102(a)(2). The declaration does not provide procedures for the adoption of budgets. These procedures are found in the bylaws.

The bylaws lay out a multi-step process for adopting a budget. First, "[t]he Executive Board shall cause to be prepared an estimated annual budget for each fiscal year of the corporation." (Collet Aff. Ex. A, at 32.) Then this estimated budget "shall be approved by the Executive Board." (*Id.* at 33.) After adoption, "copies thereof shall be furnished to each member and eligible mortgage holder within thirty (30) days of adoption, and in any rate not later than 90 days after the beginning

4

of such year." (*Id.*) Then, "[t]he Board shall set a date for a meeting of the members to consider ratification of the budget." (*Id.*) The bylaws require this meeting be set at least six days after mailing the budget, but no more than thirty days later. (*Id.*) "Unless at that meeting a majority of all unit owners reject the budget, the budget is ratified, whether or not a quorum is present." (*Id.*)

Defendant argues that every step of this process was not followed. She argues that the Board never approved an estimated budget, that it never furnished proper notice of the meeting and that no budget was ever ratified.

There is no dispute that a budget was proposed. The question is whether the Board ever approved this proposed budget in conformance with the Bylaws. The term "approve" is not defined by the bylaws. However, Article IV of the bylaws lays out the ways in which the Board may act in general. Article IV, Section 5 and Section 6 are both concerned with actions by the Board. Section 5 provides:

> **Quorum and Voting.** Attendance by a majority of directors then in office shall constitute a quorum. If a quorum exists, the directors present may take any action so long as they concur.

(*Id.* at 30.) Section 6 provides:

> **Action by Consent.** Any action required or permitted to be taken at any meeting of the Executive Board may be taken without a meeting if a written consent thereto is signed by all the directors. The Secretary shall file such written consent with the records of the meetings of the Executive Board. Such consent shall be treated as a vote of the Executive Board for all purposes.

(*Id.*) No other provisions in the bylaws discuss means by which the Board may act. The court must conclude that these are the two mechanisms by which the Board may exercise any of its powers. The fact that the Board "shall cause" an estimated budget to be prepared and then later "approve" it means that these are two separate acts. The bylaws do not state that the Board must be the one to prepare the budget, but it clearly must be the one to approve it. Nothing in the record on this

5

summary judgment indicates that the Board ever met to vote on the proposed budgets nor acted by consent to approve them. There is an issue of material fact as to whether the Board properly approved budgets before presenting them to the owners in conformance with the bylaws.

Plaintiff argues that even if the Board failed to approve the budgets, this failure was cured by notice and the ratification vote and is not a material breach of the bylaws. "A material breach of contract is a nonperformance of a contractual obligation that excuses the injured party from further performance and justifies the injured party in regarding the whole transaction as at an end." *H&B Realty, LLC v. JJ Cars, LLC*, 2021 ME 14, ¶ 16, ___ A.3d ___. Whether a material breach has occurred is a question of fact. *Id.*

There is still an issue of fact as to whether plaintiff's failure to approve the estimated budget before the annual meeting is a material breach of the Bylaws. "Some damage is presumed to flow from a legal injury to a property right." *Gaffny v. Reid*, 628 A.2d 155, 158 (Me. 1993). Moreover, the procedural formalities enshrined in the Declaration and Bylaws cut to the heart of what it means to own a condominium. *See Maples v. Contorakes*, BCD-CV-18-02, at *31 (Bus. & Consumer Ct. July 22, 2019, *Duddy, J.*) (formalities required by Declaration and Bylaws cut to heart of meaning of condominium ownership). A reasonable fact-finder could therefore conclude that a failure to properly approve proposed budgets was a material breach. On the record before the court there remains an issue of material fact as to whether any of the budgets at issue were adopted in compliance with the Bylaws. The court cannot grant summary judgment as to the amounts owed.

Counterclaim Count I: Unfair Trade Practices Act

This count was dismissed by the court's order dated March 6, 2020.

Counterclaim Count II: Breach of Fiduciary Duty

This count was dismissed without prejudice by the court's order dated March 6, 2020.

6

<u>Counterclaim Count III: Violations of Condominium Act</u>

Defendant argues that the record on summary judgment supports a prima facia case for several violations of the Maine Condominium Act ("MCA"). Specifically, she alleges that plaintiff has charged late fees in excess of what is permissible under 33 M.R.S. § 1603-115(b); that plaintiff has not passed a budget consistent with its Declaration and Bylaws, that plaintiff has attempted to collect late fees on unbudgeted expenses; and that plaintiff has acted in bad faith.

The MCA provides defendant with a cause of action on the basis of plaintiff's alleged failures to comply with the Bylaws and Declaration. *See* 33 M.R.S. § 1604-116 (2020); *see also America v. Sunspray Condo. Ass'n*, 2013 ME 19, ¶ 19, 61 A.3d 1249. For the reasons stated above, there is still an issue of material fact as to defendant's claim that plaintiff never adopted a budget consistent with the bylaws. This means there are also issues of material fact as to whether defendant owes any late fees charged on these amounts and whether the late fees themselves were ever properly imposed.

Defendant has also alleged that the imposition of assessments she claims were unbudgeted or unauthorized violated the MCA. Specifically, she challenges the imposition of a "special assessment" to fund a reserve account and assessments imposed to fund the remodeling of docks on the premises. The special assessment to fund a reserve account was proposed on the floor of the annual meeting and adopted there with no prior notice to residents. This process does not conform to the procedures articulated in bylaws, which require a budget to be approved by the Board in advance before being ratified at a later meeting. (Collet Aff. Ex. A, at 32.) Plaintiff argues that nothing in the MCA prohibits modifications to the budget at the annual meeting, which is true, but the process for adopting a budget articulated in the bylaws makes no mention of modifications to the budget at the meeting. (*Id.*) Instead, the bylaws refer to "ratification," which is automatic

7

unless a majority of unit owners reject the proposed budget. (*Id.*) Contracts are interpreted according to their plain meaning unless they are ambiguous. *Richardson v. Winthrop*, 2009 ME 109, ¶ 9, 983 A.2d 400. The bylaws allow the members to reject the proposed budget at the ratification meeting, but do not allow the proposed budget to be freely modified at that meeting and simultaneously approved. The Association is not only bound by the MCA, it is also bound by the declaration and bylaws. 33 M.R.S. § 1603-102(a) (2020); (Collet Aff. Ex. A, at 13.) There is still an issue of material fact as to whether the special assessment to fund a reserve account was ever adopted in accordance with the Bylaws.

The next issue is whether the Association violated the MCA by charging defendant for electricity. Defendant's unit received electricity through an "electrical loop," meaning that it shared electrical costs with other units in the Association and was not separately metered. (Def.'s S.M.F. ¶¶ 11-14.) The Association billed each unit on this loop by dividing the cost equally between them. (Pl.'s Reply S.M.F. ¶ 16.)

Defendant challenges these expenses as both unbudgeted and not permitted by the Bylaws. There is no evidence in the record of these fees ever being included in a budget. The declaration states that each unit owner shall pay for their own utilities including electricity and others which are "separately metered or billed . . . by the respective utility company." (Collet Aff. Ex. A, at 15.) "Utilities which are not separately metered or billed shall be treated as part of the common expenses." (*Id.*) This language in the declaration is ambiguous in that it does not address whether utilities that are neither billed individually nor to all of the members in common are considered part of the common elements. Article VI, Section 1 of the Bylaws provides interpretive guidance:

> The Executive Board shall cause to be prepared an estimated annual budget for each fiscal year of the corporation. Such budget shall take into account the estimated common expenses and cash requirements for the year, including insurance, salaries, wages, payroll taxes, supplies, materials, parts, services, maintenance, repairs, replacements, landscaping,

insurance, fuel, snow removal, trash pickup and other common expenses (**as distinguished from individual mortgage payments, real estate taxes and individual telephone, electricity and other individual utility expenses billed or charged to the separate members on an individual or separate basis rather than a common basis**).

(*Id.* at 33, emphasis added.) This section distinguishes expenses billed to the owners on an "individual or separate basis" from those billed on a "common basis" and identifies the latter with the "common expenses." Electrical costs are not considered part of the common expenses so long as they are billed separately, even if they are not billed individually.[1]

The Board has the authority to contract on behalf of the corporation, so long as those powers are not expressly reserved to the members by the MCA or the Bylaws. (*Id.* at 29.) The Board therefore has the authority to enter into contracts on plaintiff's behalf. 33 M.R.S. § 1603-102(a)(5) (2020). However, the record before the court on this motion does not show that the Board voted or acted by consent to contract with Central Maine Power and defendant to set up the provision of electricity through the loop. Therefore, defendant's argument that her electrical costs had to be budgeted as part of the common expenses fails as a matter of law, but there remain issues of material fact as to what amounts, if any, are owed for these utilities.

Next Defendant challenges the assessments for the loan to replace and improve the Association's docks. The Association has produced documentation that the bylaws were amended to allow the Board to take out the loan. (Supplemental Collet Aff. Ex. B.) These amendments to the bylaws and the loan itself were approved with the written consent of more than 75% of the votes allocated to the members. (*Id.*) The Association also adopted a special assessment of $17,000

---

[1] The MCA also provides that "[a]ny common expense benefiting fewer than all of the units shall be assessed exclusively against the units benefited." 33 M.R.S. § 1603-115(c)(2) (2020). Therefore, even if the declaration did define defendant's electrical costs as a common expense, it could only be assessed against the units on the loop, which is exactly what plaintiff did.

9

through these written consents. *(Id.)* The bylaws may be amended by "action or approval" of 75% of the votes allocated to the members. (Collet Aff. Ex. A, at 35.) Defendant has failed to cite any section of the bylaws indicating that this modification of the bylaws was improper. Therefore, defendant has failed to generate an issue of material fact as to the loan taken out to remodel the Association's docks and the $17,000 special assessment pursuant thereto.

Finally, defendant argues the Association violated its duty to act in good faith in the performance of any contract or duty governed by the MCA. 33 M.R.S. § 1601-113 (2020). Defendant argues that the Association violated this duty by violating the MCA and by "targeting her with unreasonable late fees, with petty $5.00 fees, and telling her that if she didn't like it, she could leave." (Opp. at 17.) "Bad faith imports a dishonest purpose and implies wrongdoing or some motive of self-interest." *Seacoast Hangar Condo. II Ass'n v. Martel*, 2001 ME 112, ¶ 21, 775 A.2d 1166. Defendant has not produced any evidence that suggests that plaintiff was acting with a dishonest purpose or with any intent to target her specifically. Importantly, she has not shown that she was treated differently from the other owners, nor has she produced any evidence that plaintiff was dishonest in its dealings with her. The parties have a dispute, but a dispute on its own is not evidence of bad faith from one of the parties. There is no issue of material fact as to bad faith.

To summarize, defendant has generated an issue of material fact as to whether the Association adopted budgets consistent with its bylaws, the late fees she allegedly owes, whether the special assessment to fund a reserve account was adopted consistent with the bylaws and what amounts, if any, she owes in electrical costs. Defendant has not generated an issue of material fact as to whether the $17,000 special assessment was adopted in conformance with the bylaws,

whether the Association acted in good faith or whether her electrical costs through the loop had to be budgeted as part of the common expenses.

Counterclaim Count IV: Tortious Interference

Defendant alleges that plaintiff engaged in tortious interference with a contract to sell her unit. "Tortious interference with a prospective economic advantage requires a plaintiff to prove: (1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages." *Rutland v. Mullen*, 2002 ME 98, ¶ 13, 798 A.2d 1104. Defendant has produced evidence of a purchase and sale agreement for her unit and her own affidavit attesting that the sale fell apart because of the alleged lien on her unit. (Herman Aff. ¶ 28.) This is sufficient to establish an issue of material fact as to prospective economic advantage and causation.

Defendant has failed to generate an issue of material fact as to whether plaintiff interfered with the sale through fraud or intimidation. The factual basis for this claim is that by allegedly informing the potential buyer of the lien, plaintiff engaged in tortious interference. The elements of interference by fraud are:

> (1) making a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff.

*Rutland*, 2002 ME 98, ¶ 14, 798 A.2d 1104. The only "false" representation at issue here is plaintiff's assertion that it had a valid lien against defendant's unit. "The assertion of a legal right, however, is by itself insufficient as a matter of law to support a finding of interference by fraud."

11

*Id.* ¶ 15. Even if this lien turns out to be invalid, plaintiff cannot be said to have engaged in fraud simply by claiming a legal right it believed was valid. *Id.*

Interference by intimidation requires unlawful intimidation or coercion. "Again, a person who claims to have, or threatens to lawfully protect, a property right that the person believes exists cannot be said to have intended to deceive or to have unlawfully coerced or extorted another simply because that right is later proven invalid." *Id.* ¶ 15. Therefore, even if plaintiff does not possess a valid lien against defendant's unit, the mere assertion of that lien does not rise to the level of tortious interference. Defendant has failed to generate an issue of material fact as to this claim.

<u>Counterclaim Count V: Unjust Enrichment</u>

Defendant does not object to the dismissal of this claim. (Opp. at 11.) Summary judgment will be awarded to plaintiff.

The entry is

> Plaintiff Sebago Lake Lodge Condominiums Owners Association's Motion for Summary Judgment against Helen Herman, trustee of the Helen M. Herman Living Trust is DENIED as to all claims in its Complaint.

> Plaintiff Sebago Lake Lodge Condominiums Owners Association's Motion for Summary Judgment against Helen Herman, trustee of the Helen M. Herman Living Trust's counterclaims is GRANTED as to count IV and count V.

> Plaintiff Sebago Lake Lodge Condominiums Owners Association's Motion for Summary Judgment against Helen Herman, trustee of the Helen M. Herman Living Trust's counterclaims is GRANTED as to Count III insofar as it alleges:
> 1. that a $17,000 special assessment to partially finance a project to remodel the Association's docks was not imposed in conformance with the bylaws of the Association
> 2. that the Association breached its duty of good faith; and

12

3. that electrical costs for the subset of units that are not separately metered must be budgeted as part of the common expenses.

Plaintiff Sebago Lake Lodge Condominiums Owners Association's Motion for Summary Judgment against Helen Herman, trustee of the Helen M. Herman Living Trust's counterclaims is DENIED as to the rest of Count III.

The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date: Nov 3 , 2021

Harold Stewart, II
Justice, Superior Court

Entered on the Docket: 5/7/21

13