STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO: CV-09-035

EARL T. AND SANDRA S.
HOLDSWORTH,

                    Plaintiffs,
                                                  ORDER ON DEFENDANTS'
          v.                                      MOTION FOR SUMMARY
                                                  JUDGMENT
DAVID HIGGINS III AND LINDA                       STATE OF MAINE
S. RIVARD,                                         Cumberland, ss, Clerk's Office

                    Defendants                    MAY 1 4 2010

                                                  RECEIVED


          Defendants David Higgins III and Linda S. Rivard move for summary

judgment on their counterclaim and on all counts of plaintiffs Earl and Sandra

Holdsworth's complaint. The Holdsworths accuse the defendants of slandering

their title, tortiously interfering with a contractual relationship, and negligently

claiming a property right in connection with a boundary dispute that allegedly

prevented the Holdsworths from selling their property. The defendants deny the

allegations and have counterclaimed for declaratory judgment affixing the

disputed boundary. The court grants the defendants summary judgment on the

Holdsworths' tort claims, but denies judgment on their declaratory action.

                              BACKGROUND

          On November 17, 1969, plaintiffs Earl T. and Sandra S. Holdsworth

purchased property at 111 Bruce Hill Road in Cumberland, Maine, from grantors

Paul G. Lebel and Michael Lenoci. (Pl.'s Opp. S.M.F. ¶ 1.) On November 28, 1969,

David Higgins, Jr. and Marilyn Higgins acquired an adjacent parcel of property

at 107 Bruce Hill Road from grantors Gene and Carol M. Stratton. (Pl.'s Opp.

                                       1

S.M.F. ¶¶ 2–4.) The two properties were originally joined as one twelve-acre parcel. (Pl.'s Add'l S.M.F. ¶ 10.) The Strattons' deed described their land as one-half the original twelve acres, and the Holdsworths' deed describes their property as six acres. (Pl.'s Add'l S.M.F. ¶¶ 4, 9.) Neither deed contained any metes-and-bounds description or referenced any monuments. (Pl.'s Add'l S.M.F. ¶¶ 4, 9.)

In 1969, before the Higgins purchased their property, Robert G. Blanchard surveyed the land and found or installed monuments marking the boundaries. He located the boundary between the Stratton and Holdsworth parcels at the center of a driveway and identified the Stratton parcel as encompassing approximately six and one-third acres (6.38± acres). (*See* L. Rivard Aff. Ex. 1.) The Higgins-Stratton deed, drawn after Mr. Blanchard's survey, contains the first metes-and-bounds description of the property and incorporates Mr. Blanchard's survey plat by reference. (Pl.'s Opp. S.M.F. ¶¶ 14, 16.)

The Holdsworths access their property by the driveway at the adjacent properties' boundary, and the Higgins used the same driveway to access the rear of their parcel. (Pl.'s Opp. S.M.F. ¶¶ 5, 21.) Between 1969 and 2007, all parties believed that the boundary line began at the center of the driveway and that the parties shared ownership of that driveway. (Pl.'s Opp. S.M.F. ¶¶ 20, 25, 113.) This is reflected in the Higgins-Stratton deed's metes-and-bounds, is depicted on the Blanchard Survey,[1] and is consistent with what the Strattons told the Higgins at the time of purchase. (Pl.'s Opp. S.M.F. ¶¶ 6–7, 9, 14–15.)

---

[1] The plaintiffs challenge the Blanchard Survey's admissibility under M.R. Evid. 802. The Survey is only hearsay if offered to prove the truth of what it depicts. So long as it is offered to show that the parties could have *believed* it to be true, it does not fall under the hearsay bar. The same is true of the Strattons' statements.

2

In 1986 defendants David Higgins III and Linda S. Rivard purchased the property at 107 Bruce Hill Road from David's parents, David and Marilyn Higgins. (Pl.'s Opp. S.M.F. ¶¶ 13, 17.) The defendants' deed contains the same metes-and-bounds description as the Higgins-Stratton deed, and the defendants were given a copy of the Blanchard Survey at the time of purchase. (Pl.'s Opp. S.M.F. ¶¶ 13, 17.) While the Blanchard Survey shows that the defendants' land is approximately six and one-third acres, town property tax records list the property as six acres. (Pl.'s Add'l S.M.F. ¶¶ 17–24.)

In 1991 the Holdsworths hired surveyor Daniel LaPoint to locate their boundaries. (Pl.'s Opp. S.M.F. ¶ 26.) They were interested in subdividing and developing the rear of their property and needed assistance finding their boundary markers. (Pl.'s Opp. S.M.F. ¶ 26.) Mr. LaPoint prepared a document titled "Standard Boundary Survey Plan of Land" which located the boundary at the center of the driveway, consistent with the earlier Blanchard Survey.[2] (Pl.'s Opp. S.M.F. ¶¶ 27, 29.) In 1993 Mr. LaPoint used his information from 1991 to calculate a five-acre lot split on the Holdsworths' land. (Pl.'s Opp. S.M.F. ¶¶ 33–36.) The lot split included a metes-and-bounds description of the Holdsworths' property that placed the boundary monument in the center of the disputed driveway. (Pl.'s Opp. S.M.F. ¶¶ 37–38.) While the Holdsworths ultimately abandoned their subdivision plans, they retained copies of Mr. LaPoint's work in their files. (Pl.'s Opp. S.M.F. ¶ 44.)

---

The court does not address whether this evidence is admissible for other purposes.

[2] The LaPoint documents are admissible non-hearsay offered to prove the parties' states of mind. They are also admissible as adopted admissions by the Holdsworths. *See infra.*

The Holdsworths decided to sell their property, and on July 5, 2006 their real estate agent David Banks placed it in the Multiple Listing Service. (Pl.'s Opp. S.M.F. ¶¶ 45, 47.) At that time the Holdsworths told Mr. Banks that they and the defendants shared ownership of the driveway, and showed him a depiction of the property that located the boundary line at the center of the drive. (Pl.'s Opp. S.M.F. ¶¶ 48–49.) Mr. Banks met with the defendants approximately thirty days later. (Pl.'s Opp. S.M.F. ¶ 52.) He told them that he understood from the Holdsworths that they owned a portion of the driveway, and told them that a written agreement regarding the driveway would probably be necessary for financing purposes. (Pl.'s Opp. S.M.F. ¶¶ 52–53.) Mr. Higgins and Ms. Rivard indicated that they were willing to consider such an agreement, but expressed their concern about increased traffic if the Holdsworth parcel was ever subdivided and developed. (Pl.'s Opp. S.M.F. ¶ 54.)

John E. and Mary Jo Cashman became interested in purchasing the Holdsworths' property, and on July 29, 2006, their real estate agent Pat Rabidoux met with Mr. Banks to view the parcel. (Pl.'s Opp. S.M.F. ¶¶ 55–56.) Mr. Banks told Ms. Rabidoux that the driveway was shared with the abutting owners and that the Cashmans would probably have to relocate it if they planned to develop the land. (Pl.'s Opp. S.M.F. ¶¶ 57–58.) On August 9, 2006, the Cashmans and the Holdsworths entered into a purchase-and-sale agreement pricing the property at $1,200,000. (Pl.'s Opp. S.M.F. ¶ 59.) The agreement included a copy of Mr. LaPoint's "Standard Boundary Survey Plan of Land," initialed by the Holdsworths and Cashmans, depicting the boundary as being at the center of the driveway. (Pl.'s Opp. S.M.F. ¶¶ 60, 63.)

4

On August 28, 2006, the purchase-and-sale agreement was amended to address a number of concerns, one of which was the driveway. (Pl.'s Opp. S.M.F. ¶¶ 65–66.) The amendment conditioned the closing on the Holdsworths either:

> A.) Obtain[ing] an easement with no present or future restrictions from the abutter, D. Higgins, III.
> B.) Mov[ing] the driveway so it is completely on Seller's property, in same general location as at present. . . .
> C.) Obtain[ing] an easement, prior to closing, with the only restriction being the present or future development of Seller's land, from the abutter, D. Higgins, III, and at Buyer's option either reduce the purchase price or credit the Buyer at closing, the amount of the written estimate to construct a new driveway . . . .[3]

(Pl.'s Opp. S.M.F. ¶ 66.) Then on September 21, 2006, the Cashmans reduced their offer to $1,100,000 due to issues identified by a building inspection. (Pl.'s Opp. S.M.F. ¶¶ 59, 61.)

On October 18, 2006, Mr. Banks provided Mr. Higgins with a proposed easement drafted by the Cashmans' attorney. (Pl.'s Opp. S.M.F. ¶ 70.) The proposal identified Mr. Higgins as the grantor and would create an easement "for access to a single family residence and accessory structures only," and provided that the grantees would be responsible for maintaining the easement area. (Pl.'s Opp. S.M.F. ¶ 71–73.) The proposal also included a land plat depicting the boundary as running through the center of the driveway. (Pl.'s Opp. S.M.F. ¶ 74.)

The defendants gave the proposal to their attorney, Peter Van Hemel, who drafted a counterproposal. (Pl.'s Opp. S.M.F. ¶ 79.) The counterproposal was given to Mr. Banks, who forwarded it to Ms. Rabidoux. (Pl.'s Opp. S.M.F. ¶¶ 80, 82.) The Cashmans' attorney then contacted Mr. Van Hemel directly and told him that the counterproposal was not acceptable, but that "at most, [the

---

[3] Mr. Holdsworth claims he never knew that simply moving the driveway was an option. (Pl.'s Opp. S.M.F. ¶ 67.)

5

Cashmans] would consider [adding] a sentence addressing respective liability" to their original proposal. (Pl.'s Opp. S.M.F. ¶ 85.) These negotiating positions were also communicated to Mr. Banks. (Pl.'s Opp. S.M.F. ¶ 86.) Mr. Van Hemel advised Mr. Higgins and Ms. Rivard that they did not have to accept the Cashmans' proposal or enter any sort of agreement with the Holdsworths. (Pl.'s Opp. S.M.F. ¶ 89.)

On February 9, 2007, the Cashmans terminated the purchase and sale agreement without breach. (Pl.'s Opp. S.M.F. ¶¶ 91–92.) On February 23, 2007, they made a new offer to purchase the Holdsworths' property for $1,100,000, contingent on the Holdsworths installing a new driveway. (Pl.'s Opp. S.M.F. ¶ 93.) A new driveway would have cost approximately $20,000. (Pl.'s Opp. S.M.F. ¶ 69.) The Holdsworths rejected the offer. (Pl.'s Opp. S.M.F. ¶ 94.) In March 2007 Paul Babbidge of Titcomb Associates conducted a new survey of the Holdsworths' property. (Pl.'s Opp. S.M.F. ¶ 95.) This new Titcomb Survey located the boundary between the Holdsworths' and defendants' properties to the southwest of where the Blanchard Survey had identified, placing the entire driveway on the Holdsworths' land. (Pl.'s Opp. S.M.F. ¶¶ 95–96.)

On March 22, 2007, Mr. Banks met with Mr. Higgins to give him a copy of the Titcomb Survey and advise him that the Holdsworths would probably litigate the matter if the defendants refused to accept the new boundaries. (Pl.'s Opp. S.M.F. ¶¶ 96, 108–09.) Mr. Higgins became agitated and a contentious exchange occurred in which he asserted that he had a right to use or close the driveway and possibly stated that he would do so. (Pl.'s Opp. S.M.F. ¶¶ 96, 106–11.) However, Mr. Higgins quickly "backed off" from his statements and told Mr. Banks that he did not "want to get in the middle of this." (Pl.'s Opp. S.M.F.

6

¶ 112.) There is no allegation that Mr. Higgins ever attempted to prevent the Holdsworths from using the driveway, or that his specific threats were communicated to third parties.

Mr. Higgins and Ms. Rivard did not and do not believe that they had to accept the Titcomb Survey as conclusive. (Pl.'s S.M.F. ¶¶ 97–98.) Their attorney, Mr. Van Hemel, advised them that they were not legally obligated to do so given the conflict between the Titcomb Survey, Blanchard Survery, and the information provided by the Holdsworths in their easement proposals. (Pl.'s Opp. S.M.F. ¶ 101.) They also retained SGC Engineering, LLC to review the Titcomb Survey. (Pl.'s Opp. S.M.F. ¶ 99.) Timothy Patch of SGC advised the Higgins that they did not have to accept the Titcomb Survey as authoritative due to the inconsistencies between it and other survey information. (Pl.'s Opp. S.M.F. ¶ 100.) At some point the defendants, through Mr. Van Hemel, recorded a copy of the Blanchard Survey in the Cumberland County Registry of Deeds. (Pl.'s Opp. S.M.F. ¶ 117.)

After rejecting the Cashmans' second offer in February 2007, the Holdsworths continued to market their property but were unable to find a buyer. (Pl.'s Opp. S.M.F. ¶ 102.) Mr. Banks informed potential buyers that there was a dispute over the boundary at the driveway. (Pl.'s Opp. S.M.F. ¶ 103.) On February 27, 2008, the Holdsworths sold their property to their children for $950,000. (Pl.'s Opp. S.M.F. ¶¶ 105–05.)

On January 14, 2009, the Holdsworths filed their complaint against Mr. Higgins and Ms. Rivard alleging "slander of title, intentional interference with contractual relations, and negligence arising from [their] persistent statements that they own the gravel driveway . . . . As a result of the [defendants'] conduct, [the Holdsworths'] contract to sell their property collapsed, and [they] have

7

suffered significant damages." (Pl.'s Compl. ¶ 1.) Mr. Higgins and Ms. Rivard deny the allegations and contend that numerous affirmative defenses bar the Holdsworths' claims including waiver, estoppel, and "their own statements and actions through which they indicated that [the defendants] own the subject driveway, or portions thereof." (Def.'s Ans. at 6 ¶ 5.) The defendants also counterclaim for declaratory judgment affirming their ownership interest in the driveway.

## DISCUSSION

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A motion for summary judgment must be supported by citations to record evidence of a quality that would be admissible at trial. *Id.* at ¶ 6, 770 A.2d at 656 (citing M.R. Civ. P. 56(e)). An issue of "fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkell v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747 (quoting *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179). "Summary judgment is appropriate even when concepts such as motive or intent are at issue, . . . if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" *Dyer v. DOT*, 2008 ME 106, ¶ 14, 951 A.2d 821, 825 (quoting *Vives v. Fajardo*, 472 F.3d 19, 21 (1st Cir. 2007)).

## 1.    Slander of Title

To prove their claim for slander of title, the Holdsworths "must prove (1) there was a publication of a slanderous statement disparaging [their] title; (2) the

8

statement was false; (3) the statement was made with malice or made with reckless disregard of its falsity; and (4) the statement caused actual or special damages." *Colquhoun v. Webber*, 684 A.2d 405, 409 (Me. 1996).

The defendants argue that they did not publish any statements about the Holdsworths' property because they only communicated with the Holdsworths' agent, Mr. Banks, and then only because he solicited their statements. This argument is inadequate. The Higgins arguably published the alleged falsities to the Cashmans' attorney through Mr. Van Hemel, and they did publish their claim to the driveway by recording the Blanchard Survey in the registry. Furthermore, they knew or should have known that any statements they made to Mr. Banks regarding their interest in the driveway would necessarily be conveyed to any potential buyer interested in the Holdsworths' land. *Hill v. Lubec*, 609 A.2d 699, 701 (Me. 1992) (quoting A. Horton and P. McGehee Maine Civil Remedies § 20.7 (2d ed. 1992)) ("'[A] defendant need not intentionally communicate a defamatory statement to third parties; it is sufficient if the defendant knows or should know that it will be communicated to third parties.'").

The question of whether the statements were demonstrably false remains a disputed question of fact. *See infra*. The court assumes, for the purpose of this summary judgment motion only, that the defendants' alleged statements were false. *See Beaulieu v. The Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685 (citing *Green v. Cessna Aircraft Co.*, 673 A.2d 216, 218 (Me. 1996)) (ambiguities must be resolved in favor of non-moving party).

Assuming the statements were false, they must have been made with malice or recklessness to support a claim for slander of title. Malice means

9

> the originator of the statement "knows his statement to be false, recklessly disregards its truth or falsity, or acts with spite or ill will." . . . Reckless disregard for the truth can be proved by evidence that "establishes that the maker of a statement had 'a high degree of awareness of probable falsity or serious doubt as to the truth of the statement.'"

*Cole v. Chandler*, 2000 ME 104, ¶ 7, 752, A.2d 1189, 1194 (quoting *Rippett v. Bemis*, 672 A.2d 82, 87 (Me. 1996)) (internal citations omitted). The statements must also have "caused actual or special damages." *Colquhoun*, 684 A.2d at 409. It is necessary to treat these two elements together because the Holdsworths are not clear about which allegedly false statements caused which alleged harm.

The Holdsworths argue they were first damaged by the collapse of their potential sale to the Cashmans. Throughout the period of their dealings with the Cashmans, all parties unquestioningly believed that the defendants had an ownership interest in the now-disputed driveway. Mr. Higgins and Ms. Rivard could base their belief on their deed and the deed of their parents, the Blanchard Survey, their own family history, and their long unchallenged use of the way. The Holdsworths admitted that they believed Mr. Higgins and Ms. Rivard had an ownership stake in the driveway, and the LaPoint plat in their records showed the boundary as falling at the drive's center. A copy of this plat was included in the purchase-and-sale agreement they executed with the Cashmans. Both the Holdsworths and the Cashmans implicitly acknowledged the defendants' partial ownership of the driveway when they requested that Mr. Higgins grant an easement for the drive's use.

The record shows that the sale collapsed at least in part because the Holdsworths refused to build a new driveway, refused to give credit for a new driveway, and were unable to obtain an easement to the Cashmans' satisfaction. The Holdsworths do not now argue that the defendants were obligated to grant

10

an easement, rather they contend that the defendants' claim to the driveway was false from the first. The Holdsworths formed this belief entirely on the basis of information obtained after they had rejected the Cashmans' second offer to purchase their property.

While Mr. Higgins and Ms. Rivard have submitted affidavits claiming they acted in good faith and provided evidence that objectively supports their asserted belief, the Holdsworths have not produced anything to prove the contrary. To support their accusation of malice or recklessness, the Holdsworths linger on the fact that Ms. Rivard affirmed the size of the defendants' land to be six acres for tax purposes while the Blanchard Survey shows the property to be six and one-third acres. The Holdsworths insinuate, without actually alleging, that this inconsistency of position shows that the defendants could not reasonably have believed their title documents and supports the charge of malice or recklessness. This is the precise sort of "improbable inference" or "unsupported speculation" that is inadequate to generate a triable issue of fact. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d at 825.

The unrebutted evidence overwhelmingly shows that the defendants had every reason to believe they owned a portion of the driveway and acted in good faith when they asserted that interest. Indeed, it would be very strange to allow the Holdsworths to prosecute Mr. Higgins and Ms. Rivard for claiming a right after the Holdsworths themselves told the defendants it existed.

After the Cashmans were rebuffed in their attempt to purchase the Holdsworths' property, the defendants recorded a copy of the Blanchard Survey in the registry of deeds. The Holdsworths contend that this recordation was another published slander and that the defendants' refusal to accept the Titcomb

Survey and abandon their claim in the driveway demonstrates malice and recklessness.

Accepting that Mr. Higgins and Ms. Rivard claimed their interest in the driveway with good faith based on substantial evidence before the Titcomb Survey was performed, they have every right to maintain that claim against the Titcomb Survey's contrary assertion. *See Rutland v. Mullen,* 2002 ME 98, ¶ 15, 798 A.2d 1104, 1111 (assertion of a legal right is not fraud); *Gammon v. Tremblay,* 2002 Me. Super. LEXIS 94, ** 19–20 (May 1, 2002) (asserting good faith belief in location of boundary does not constitute slander if incorrect); Restatement (Second) Torts § 647 (1977) ("A rival claimant is conditionally privileged to disparage another's property . . . by an assertion of an inconsistent legally protected interest in himself."). Such a rule "is necessary to enable [a] claimant to preserve the enforceability of his claim." Restatement (Second) Torts § 647 cmt. f.

Even if the recordation of the Blanchard Survey did cause the Holdsworths cognizable damages, it was hardly a malicious or reckless act. Knowing that the boundary was disputed, Mr. Higgins and Ms. Rivard had to record evidence of their interest to preserve their legal claim in the driveway against future purchasers. They only way they could conclusively verify the Blanchard Survey's accuracy was through litigation; after litigation there would be no need to preserve their claim. Recording the survey pending final resolution of the good-faith dispute through litigation is not a slanderous act. *E.G. Fischer v. Bar Harbor Banking & Trust Co.,* 673 F.Supp. 622, 627 (D. Me. 1987).

The Holdsworths have failed to show that the defendants acted with anything but a good-faith belief in the legitimacy of their claim to the driveway. Count I for slander of title fails as well.

12

## 2.    Intentional Interference with Contractual and Business Relations

The Holdsworths contend that the same essential facts undergirding their slander of title claim make out a cause of action for tortious interference with a contract or prospective economic advantage. To prove their case, the Holdsworths must show: "(1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages." *Rutland*, 2002 ME 98, ¶ 13, 798 A.2d at 1110. There is no question that the Holdsworths had a contract or economic expectancy with the Cashmans. Mr. Higgins and Ms. Rivard's defense must rest on the other two elements of the claim.

"[F]raud or intimidation is critical to a claim for tortious interference . . . ." *Id.* ¶ 13 n.5, 798 A.2d at 1110 n.5. As discussed above, the Holdsworths have failed to make their case for fraud because the evidence unquestionably shows that Mr. Higgins and Ms. Rivard acted in good faith to protect a perceived legal right in the driveway. Their action for tortious interference must therefore rest on intimidation. "Interference by intimidation involves unlawful coercion or extortion. . . . Again, a person who claims to have, or threatens to lawfully protect, a property right that the person believes exists cannot be said to have intended to deceive or to have unlawfully coerced or extorted another" even if the person is mistaken. *Id.* ¶ 16, 798 A.2d at 1111 (internal citations omitted) (citing *Pombriant v. Blue Cross/Blue Shield of Maine*, 562 A.2d 656, 659 (Me. 1989); Restatement (Second) of Torts § 773 (1979)).

When dealing with the Cashmans, the Holdsworths undeniably believed that the defendants had an ownership stake in the driveway as evidenced by the

13

survey plat in the purchase and sale agreement and by their request for an easement. Mr. Higgins and Ms. Rivard shared this belief on the basis of their deed, their predecessor deed, the Blanchard Survey, and their family's historic understanding of their boundaries dating back to 1969. This belief and the actions stemming from it now form the basis of the Holdsworths' claim for interference by intimidation.

It is hard to see how the Higgins agreement with a belief the Holdsworths independently held and communicated to the Cashmans could constitute coercion or extortion. More importantly, the defendants' statements and actions were motivated by a good-faith belief in their right to the drive and a desire to protect their legal interests. *See Rutland*, 2002 ME 98, ¶ 16, 798 A.2d at 1111. They had no obligation to give away a right over what all parties believed was the defendants' property for the Holdsworths' or Cashmans' benefit. The Holdsworths' have not provided any evidence to support their claim that Mr. Higgins and Ms. Rivard did anything but assert and defend their good-faith claim to a property right in the driveway. "The evidence is therefore . . . insufficient as a matter of law to support a finding of interference by intimidation" or by fraud. *Id.*

3.     Negligence

In their final claim, the Holdsworths contend that the defendants owed them a duty of care regarding statements made about property ownership. Arising as it does from the same set of facts behind the first two counts, this is in substance a claim for negligent slander of title or perhaps negligent interference with an economic advantage. Maine has followed the Second Restatement of Torts in rejecting the tort of negligent interference. *Rutland*, 2002 ME 98, ¶ 13 n.5,

14

A.2d at 1110 n.5. "[F]raud or intimidation is critical to" such a claim "because it distinguishes unlawful conduct from conduct inherent in a healthy competitive economic environment." *Id.*

Similarly, Maine has not recognized the tort of "negligent slander of title." The Federal District Court of Maine has noted that "[m]alice is the 'gist of the action' for slander of title." *E.G. Fischer*, 673 F. Supp. 622, 626 (D. Me. 1987) (quoting *Markowitz v. Republic Nat'l Bank of N.Y.*, 651 F.2d 825, 828 (2d. Cir. 1981)). Malice requires something more than negligence. *Cole*, 2000 ME 104, ¶ 7, 752, A.2d at 1194. The presence of malice is necessary because a rival claimant to property is generally privileged to assert a good-faith legal interest in himself, even if the belief is mistaken or unreasonable. Restatement (Second) Torts § 647 cmt. d (cited approvingly at *E.g. Fischer*, 673 F. Supp. at 626); *see Rutland*, 2002 ME 98, ¶ 16, 798 A.2d at 1111 (any good-faith attempt to protect a legal interest cannot constitute fraud or intimidation).

If the court were to recognize the Holdsworths' claim for negligence in this case, it would allow them to perform an end-run around the heightened mental states required to support slander of title and tortious interference. Even if the court were to recognize such a tort and the requisite duty to refrain from unreasonable assertions of ownership, the undisputed facts show that Mr. Higgins and Ms. Rivard had ample objective bases from which they would reasonably believe they owned a portion of the disputed driveway. The court grants the defendants summary judgment on the count of negligence.

4.    **Declaratory Judgment**

In addition to requesting summary judgment on the Holdsworths' tort claims, the defendants seek judgment on their declaratory judgment action. They

15

advance the theories of acquiescence and the rule of practical location to establish their right in the driveway as a matter of law. The Holdsworths object that these specific theories were not pleaded, that the defendants rely on inadmissible evidence, and that they have not met their burden of proof.

As a preliminary matter, the defendants' counterclaim pleads facts adequate to raise the issues of acquiescence and the rule of practical location, and thus meets the notice pleading requirements of M.R. Civ. P. 9. *See Bean v. Cummings*, 2008 ME 18, ¶ 8, 939 A.2d 676, 679. Also, the LaPoint survey plat was initialed by the Holdsworths making it an adoptive admission and admissible non-hearsay. M.R. Evid. 801(d)(2)(B), 803(14).

To prevail on their claim for boundary by acquiescence, the defendants must show:

> (1) possession up to a visible line marked clearly by monuments, fences or the like; (2) actual or constructive notice to the adjoining landowner of the possession; (3) conduct by the adjoining landowner from which recognition and acquiescence not induced by fraud or mistake may be fairly inferred; (4) acquiescence for a long period of years such that the policy behind the doctrine of acquiescence is well-served by recognizing the boundary.

*Calthorpe v. Abrahamson*, 441 A.2d 284, 289 (Me. 1982). Acquiescence must be proven by clear and convincing evidence. *Id.* at 289. The defendants contend that the LaPoint survey plat establishes that the Holdsworths had notice of the defendants' constructive possession of the road since 1991, and that the Holdsworths' failure to challenge the LaPoint findings evinces their long acquiescence.

The typical case for boundary by acquiescence involves "the significance of a fence or some other structure commonly used to indicate a boundary line." *Id.* at 290. A roadway can serve as such a line. *Marja Corp. v. Allain*, 622 A.2d

16

1182, 1185 (Me. 1993). However, in this case the defendants are not arguing that the roadway *itself* constitutes the boundary. Instead, the argument is that the border begins at the center of one end of the driveway and travels from there in a straight line while the roadway snakes through it. Since the roadway itself is not the boundary, the defendants must rely on other monuments. The only other alternative is the location of formal boundary markers, and the location of these is question of fact not resolved by the record. *See Theriault v. Murray*, 588 A.2d 720, 721 (Me. 1991) (location of boundaries and markers on the face of the Earth is a question of fact).

Other questions of fact remain as well. The absence of definite boundary-marking structures raises questions about the defendants' possession of the area up to the alleged border. Also, the defendants have not shown by clear and convincing evidence that the alleged acquiescence has continued for a period of years such that "the policy behind the doctrine of acquiescence is well-served by recognizing the boundary." *Calthorpe*, 441 A.2d at 289.

Separate from boundary by acquiescence, the rule of practical location by parol agreement applies "[w]here adjoining owners deliberately erect monuments, fences, or make improvements on a line between their lands on the understanding that it is the true line, [and] it amounts to a practical location . . . ." *Calthorpe*, 441 A.2d at 288 (quoting H. Skelton, *The Legal Elements of Boundaries and Adjacent Properties* § 322 at 362–63 (1930)). Boundary by parol agreement requires "proof of an agreement to locate and fix a boundary on a certain line . . . ." *Id.* The defendants have not produced any evidence of an agreement between themselves and the Holdsworths to fix the boundary at a given location.

17

If the Holdsworths placed boundary monuments into the earth, it was a unilateral action the defendants neither knew of nor relied upon.

**The entry is:**

The court grants the defendants' motion for summary judgment on all of the plaintiffs' claims. The court denies summary judgment on the defendants' counterclaim for declaratory judgment.

DATE: May 13, 2010

Roland A. Cole
Justice, Superior Court

01 0000003741      BREWSTER, SETH

ONE PORTLAND SQUARE PO BOX 586 PORTLAND ME 04112-0586

| F | EARL T HOLDSWORTH | PL | RTND | 01/14/2009 |
| F | SANDRA S HOLDSWORTH | PL | RTND | 01/14/2009 |
| F | KERRI D HOLDWORTH-CTRDEF. | DEF | RTND | 03/23/2009 |
| F | STACY L COGGSHALL-CTRDEF. | DEF | RTND | 03/23/2009 |
| F | SCOTT T HOLDWORTH-CTRDEF | DEF | RTND | 03/23/2009 |

02 0000002617      KNOWLES, WILLIAM

ONE PORTLAND SQUARE PO BOX 586 PORTLAND ME 04112-0586

| F | EARL T HOLDSWORTH | PL | RTND | 12/02/2009 |

EARL T HOLDSWORTH ET AL VS DAVID HIGGINS III ET AL
UTN:AOCSsr  -2009-0004578      CASE #:PORSC-CV-2009-00035

----------------------------------------------------------------

04 0000009364      SMALL, THEODORE

100 MIDDLE ST PO BOX 9729 PORTLAND ME 04104-5029

| F | DAVID HIGGINS, III | DEF | RTND | 02/25/2009 |
| F | LINDA S RIVARD | DEF | RTND | 02/25/2009 |

STATE OF MAINE                                      SUPERIOR COURT
CUMBERLAND, ss.                                     CIVIL ACTION
                                                    DOCKET NO: CV-09-035
                                                    RAC-CUM-7/2/2010


EARL T. AND SANDRA S.
HOLDSWORTH,

              Plaintiffs,
                                                    ORDER ON PLAINTIFFS'
       v.                                           MOTION TO RECONSIDER

DAVID HIGGINS III AND LINDA
S. RIVARD,

              Defendants


       Plaintffs Earl T. and Sandra S. Holdsworth request that the court

reconsider its May 14, 2010 order in which it granted defendants David Hggins

III and Linda S. Rivard's motion for summary judgment on the plaintiffs' tort

claims. The parties in this case shared ownership of a driveway for thirty-eight

years without any recorded dispute. When the defendants' parents and

predecessors in interest purchased their property in 1968, a survey located the

parties' common boundary at the center of a shared driveway. The survey was

used to create the metes and bounds in the defendants' deed, and a copy of the

survey plat was attached. In the early 1990s the plaintiffs had another survey

performed, which confirmed the original 1969 results. The plaintiffs attempted to

sell their property in 2006, at which time they included a copy of their 1993

survey plat in the purchase and sale agreement and acknowledged the

defendants' interest in the driveway to both the potential buyers and the

defendants directly. A dispute arose at that time, and the sale fell through.

1

As a result of this dispute, the plaintiffs commissioned a new survey in 2007. This "Titcomb Survey" located the driveway entirely on the plaintiffs' land. The plaintiffs confronted the defendants and demanded that they accept the new boundaries shown by the Titcomb Survey. The defendants refused. They consulted their attorney and an engineer, and were told that the Titcomb Survey appeared reasonable but did not necessarily supplant the prior surveys establishing the traditional boundary. To protect their interests, the defendants recorded a copy of the 1969 survey in the Deed Registry. The plaintiffs then sued for slander of title, tortious interference, and negligence.

On the defendants' motion for summary judgment, the court noted that there is no tort of "negligent slander of title" or "negligent interference" because the essence of slander and interference are malice, fraud, and bad faith. *See Rutland v. Mullen*, 2002 ME 98, ¶¶ 13, 15, 798 A.2d 1104, 1110–11 (tortious interference requires fraud or intimidation; good-faith assertion of a legal claim is neither); *Cole v. Chandler*, 2000 ME 104, ¶ 7, 752 A.2d 1189, 1194 (defining slander to include knowledge of a statement's falsity, high degree of awareness of its falsity, or serious doubt as to its truth); *Colquhoun v. Webber*, 684 A.2d 405, 409 (Me. 1996) (slander of title requires malicious falsehood). Law and policy encourage the defense of property rights, and a good-faith assertion of a legal interest is privileged, even if the belief is unreasonable. Restatement (Second) Torts § 647 cmt. d; *Rutland*, 2002 ME 98, ¶ 16, 798 A.2d at 1111. The court found that the plaintiffs had failed to show that the defendants had not asserted their legal interests in good faith and granted the defendants' motion.

The plaintiffs now ask the court to reconsider. The court treats a motion for reconsideration pursuant to Rule 59(e) as a motion to alter or amend a

judgment. *Geyerhahn v. United States Fid. & Guar. Co.*, 1999 ME 40, ¶ 9, 724 A.2d 1258, 1260. "It is a procedural vehicle to correct a judgment where there has been an error of law or clear error amounting to an abuse of discretion." *Westbrook Assocs. v. City of Westbrook*, 1994 Me. Super. LEXIS 216 (June 3, 1994). The plaintiffs argue that the Titcomb Survey itself generates a triable issue of fact as to whether the defendants asserted their rights in good faith. They essentially say that the defendants need to prove that they were not immediately convinced that the Titcomb Survey, challenging their interests and standing alone against thirty-eight years of history, was correct. The defendants need to prove at trial that they did not record their original survey and assert their legal interests in bad faith, but did in fact harbor a good-faith belief in the truth of their position.

The court rejected the plaintiffs' argument in its original order, and it rejects it again here. On summary judgment the court does give the nonmoving party the benefit of all reasonable inferences, *Beaulieu v. The Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685, but will not engage in unsupported speculation on the party's behalf. *Dyer v. DOT*, 2008 ME 106, ¶ 14, 951 A.2d 821, 825. Speculation is precisely what the plaintiffs request. The Titcomb Survey does create an issue of fact regarding the location of the parties' common boundary, which remains in dispute. It does not, however, show on its face that the defendants believed it to be true, no matter how reasonable it might be. The court will not speculate that the existence of a survey challenging the defendants' boundary after thirty-eight years of undisturbed occupation caused the defendants to abandon belief in the accuracy of their deed. The plaintiffs were required to show something more to meet their burden of showing malice, fraud, and bad faith sufficient to penalize the defendants for moving to protect their legal property interests.

**The entry is:**

The court denies the plaintiffs motion for reconsideration.

DATE: *August 2, 2010*

_____
Roland A. Cole
Justice, Superior Court

4

---

01 0000003741          BREWSTER, SETH
    ONE PORTLAND SQUARE PO BOX 586 PORTLAND ME 04112-0586

| F | EARL T HOLDSWORTH | PL | RTND | 01/14/2009 |
|---|---|---|---|---|
| F | SANDRA S HOLDSWORTH | PL | RTND | 01/14/2009 |
| F | KERRI D HOLDWORTH-CTRDEF. | DEF | RTND | 03/23/2009 |
| F | STACY L COGGSHALL-CTRDEF. | DEF | RTND | 03/23/2009 |
| F | SCOTT T HOLDWORTH-CTRDEF | DEF | RTND | 03/23/2009 |

02 0000002617          KNOWLES, WILLIAM
    ONE PORTLAND SQUARE PO BOX 586 PORTLAND ME 04112-0586

| F | EARL T HOLDSWORTH | PL | RTND | 12/02/2009 |
|---|---|---|---|---|

------------------------------------------------------------------------

04 0000009364             SMALL, THEODORE
      100 MIDDLE ST PO BOX 9729 PORTLAND ME 04104-5029

| | | | | |
|---|---|---|---|---|
| F | DAVID HIGGINS, III | DEF | RTND | 02/25/2009 |
| F | LINDA S RIVARD | DEF | RTND | 02/25/2009 |

------------------------------------------------------------------------